612 A.2d 559

B. William ISAACS and Emily E. Isaacs, his wife, Appellants,

v.

WILKES–BARRE CITY ZONING HEARING BOARD, Appellee.

Commonwealth Court of Pennsylvania.

Argued April 6, 1992.

Decided June 22, 1992.

Bruce J. Phillips, for appellants.

No appearance for appellee.

Before McGINLEY and SMITH, JJ., and NARICK, Senior Judge.

SMITH, Judge.

B. William Isaacs and Emily E. Isaacs (Isaacs) appeal from the September 4, 1991 order of the Court of Common Pleas of Luzerne County which affirmed the decision of the Wilkes–Barre City Zoning Hearing Board (Board) denying the Isaacs' application for a variance from the provision of the Wilkes–Barre City Zoning Ordinance (Ordinance) prohibiting a residential conversion on the first floor of a structure in the commercial zoning district. The Isaacs are the owners of property located in a C–3 (Commercial, Central) zoning district, and consisting of five apartments on the second and third floors and approximately 2,200 square feet of commercial area on the first floor. They propose to convert 55% of the rear portion of the first floor to two one-bedroom apartments while retaining the remaining 45% front portion for commercial use.

The issues before this Court are whether the Isaacs' proposal to convert the rear portion of the first floor of their property to a multi-family residence while maintaining the front portion as commercial use constitutes a residential conversion prohibited by Section 1675(e) of the Ordinance [1]; whether the Board erred in concluding that a financial hardship is not relevant in determining unnecessary hardship; and whether the Board's finding that a variance would alter the essential character of the neighborhood is supported by substantial evidence.

The Board concluded that the Isaacs failed to prove an unnecessary hardship resulting from unique physical conditions peculiar to their property; that the testimony presented at the hearing established only that the Isaacs would have financial gain if a proposed residential conversion is permitted; and that the grant of a variance would affect the essential

1. *Section 1675. Special Approval—Residential, Conversion to:*
 Any structure located in an R, C or S District, which has not been designed or constructed to be used for residential purposes, may be converted for residential use subject to the approval of the Zoning Hearing Board in accordance with all of the following:
 ....
 (e) In a C–3 zone a proposed residential conversion shall not be permitted on the first level of a structure.

character of the neighborhood and would be contrary to the statement of community objectives for the C–3 zoning district. The Isaacs appealed to the trial court which, without taking additional evidence, affirmed the Board's decision.[2]

The Isaacs first contend that their proposed conversion of the rear portion of the first floor from commercial to residential use does not constitute a residential conversion under Section 1675(e) because the front 45% of the first floor will be retained as commercial use, and Section 1675(e) should be strictly construed as prohibiting only a "total" residential conversion on the first floor. They correctly state that the language of the zoning ordinance should be interpreted, where doubt exists, in favor of the property owner and against any implied extension of restrictions upon the use of one's property. Section 603.1 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* added by Section 48 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10603.1; *Neill v. Bedminster Township Zoning Hearing Board,* 140 Pa.Commonwealth Ct. 365, 592 A.2d 1385 (1991). However, this rule of construction is inapplicable where, as here, the words of the zoning ordinance are clear and free from any ambiguity. *Lucia v. Zoning Hearing Board of Township of Upper St. Clair,* 63 Pa.Commonwealth Ct. 272, 437 A.2d 1294 (1981). Under the clear language of Section 1675(e), *any* residential conversion is prohibited on the first floor of the building, and this Court may not add language to the Ordinance under the pretext of pursuing legislative intent. *Rudolph v. Zoning Hearing Board of College Township,* 80 Pa.Commonwealth Ct. 28, 470 A.2d 1104 (1984).

Next, the Isaacs challenge the Board's denial of their request for a variance to permit the residential conversion. To establish entitlement to a variance, a property owner must prove that a zoning ordinance imposes an unnecessary hard-

2. This Court's scope of review in zoning cases where, as here, the trial court did not take additional evidence is limited to determining whether the Board committed an error of law or a manifest abuse of discretion. *Valley View Civic Ass'n v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983); *De Cray v. Zoning Hearing Board of Upper Saucon Township,* 143 Pa.Commonwealth Ct. 469, 599 A.2d 286 (1991).

ship because of unique physical conditions peculiar to the property, and not by conditions generally created by the zoning ordinance in the neighborhood; the physical conditions prevent the property from any reasonable use; the unnecessary hardship is not self-inflicted; the requested variance will not destroy the character of the neighborhood; and the variance represents the least possible modification of the ordinance. Section 910.2 of MPC, added by Section 89 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2; *Valley View Civic Ass'n v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983); *Curtis Investment Co. v. Zoning Hearing Board of Borough of West Mifflin*, 140 Pa.Commonwealth Ct. 302, 592 A.2d 813 (1991). An applicant's burden is a heavy one, and a variance should be granted sparingly and only under exceptional circumstances. *Randolph Vine Assoc. v. Zoning Board of Adjustment of Philadelphia*, 132 Pa.Commonwealth Ct. 452, 573 A.2d 255 (1990), *appeal denied*, 527 Pa. 589, 588 A.2d 512 (1991).

▮ The Isaacs argue that they established an unnecessary hardship due to their difficulty in obtaining commercial tenants for the first floor of the property and that residential use of the rear portion is required to obtain income to maintain the commercial use. At the hearing, William Isaacs testified that the first floor had been vacant for seven months, that an attempt to find new tenants had been unsuccessful, and that due to low commercial rents in the area, the current rental income was insufficient to maintain the entire first floor as commercial uses. Unnecessary hardship may be shown by demonstrating either that physical characteristics of the property were such that it could not be used for the permitted purpose or could only be conformed to such purpose at a prohibitive expense, or that the characteristics of the area were such that the lot has either no value or only a distress value for any permitted purpose. *Davis v. Zoning Board of Adjustment*, 78 Pa.Commonwealth Ct. 645, 468 A.2d 1183 (1983).

▮ While testimony presented by the Isaacs tends to show that they were experiencing economic hardship, such

economic hardship alone does not constitute a unique unnecessary hardship to justify the grant of a variance. *Whitpain Township Board of Supervisors v. Whitpain Township Zoning Hearing Board,* 121 Pa.Commonwealth Ct. 418, 550 A.2d 1355 (1988), *appeal denied,* 525 Pa. 639, 578 A.2d 932 (1990). Further, mere evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance. *Valley View.* Although courts have found an unnecessary hardship where economic infeasibility resulted from the high cost of development due to physical characteristics or topography of the property, the facts here do not present a case for such hardship.[3]

The Isaacs further argue that the irregular shape of the lot with narrow frontage and long depth justifies grant of a variance. The objectors who own properties on Main Street in close proximity to the Isaacs' property testified that their properties had similar shapes; that there are no apartments on the first floor in the area; and that they also experienced difficulties in locating commercial tenants and financial plight in operating their properties. Some objectors further indicated that their properties were fully rented through diligent efforts. Thus, the record contains ample evidence to support the Board's finding that the Isaacs' asserted hardship was not due to unique physical characteristics peculiar to their property. The testimony demonstrates only that the deteriorating condition of the area affected the entire neighborhood and all property owners.

 Finally, the Isaacs challenge the Board's finding that the proposed residential conversion would have a negative impact upon the stated objectives of the city "to create, preserve and enhance the central business district as a region-

3. *See Gro Appeal,* 440 Pa. 552, 269 A.2d 876 (1970) (economic infeasibility resulted from the high cost of the site improvement due to the topography of the ground); *Ferry v. Kownacki,* 396 Pa. 283, 152 A.2d 456 (1959) (economical infeasibility resulted from the prohibitive costs imposed by the terrain); *Davis* (grant of a variance was proper to allow rehabilitation of a vacant, dilapidated four-story apartment building because without a variance, the property would have to be demolished and then rebuilt to comply with zoning requirements).

al center of shopping, employment, office, financial, government, hotels, entertainment and culture." Section 801.9 of the Ordinance. Testimony indicated that the overall makeup of the area is commercial and that the Isaacs' proposed residential conversion would have a negative impact upon the commercial characteristics of the neighborhood. The Board concluded that the grant of a variance would encourage future development of the area for residential purposes thereby affecting the essential character of the neighborhood. Since the Board's findings are based upon substantial evidence, those findings may not be disturbed on appeal. *Valley View.*

## ORDER

AND NOW, this 22nd day of June, 1992, the order of the Court of Common Pleas of Luzerne County dated September 4, 1991 is affirmed.