**CITY OF HOPE, Appellant**

v.

**SADSBURY TOWNSHIP ZONING HEARING BOARD and Sadsbury Township.**

Commonwealth Court of Pennsylvania.

Argued Oct. 18, 2005.

Decided Jan. 17, 2006.

P. Raymond Bartholomew, Hermitage, for appellant.

Harry Faber White, II, Meadville, for appellee, Sadsbury Township Zoning Hearing Board.

BEFORE: SMITH–RIBNER, Judge, and COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Appellant, City of Hope (the Church) appeals from an order of the Court of Common Pleas of Crawford County (trial court), which affirmed a decision of the Sadsbury Township Zoning Hearing Board (ZHB) that, *inter alia*, determined that a campground and hiking trails were not an accessory use to a church/worship center. The Church is a nonprofit corporation that purchased a single, twenty-four acre parcel of land (the Property) for the construction of a non-denominational ministry campus, and desires to operate a campground and hiking trails on the Property as part of a ministry campus.

The Church plans to develop the Property for various Christian ministry purposes, including missionary conferences and educational workshops. The Property is within the Sadsbury Township's (Township) General Commercial District, which allows, as a permitted use by right: "Churches and building facilities normally incidental thereto" and *accessory uses*. (Twp. Ordinance § 512.1(u),(z).)[1] *Accessory use* is defined as "[a] use or structure **customarily incidental and subordinate to** the principal use or structure and which contributes to the comfort, convenience and necessities of occupants of the principal use or structure which is located on the same lot with the principal use or structure...." (Twp. Ordinance § 300.)

The Clerk of the Township submitted a history of the Property to the parties in a letter dated January 13, 2004. (Twp. Remand Ex. 1.) From approximately 1961 until approximately 1985, the Property was owned and operated by David and Delores Baker as "Boonesboro Campground." (Church Remand Ex. 1.) As Boonsboro Campground, the Property provided "full and primitive camping" with a recreation hall, office, drilled wells, city sewage connections, and "full hookups for camping." (Church Remand Ex. 1.) In 1986, an entity named Conneaut Bay Resorts acquired the Property for the operation of a camp/RV park recreational complex. The Township approved the camp/RV park owned by Conneaut Bay Resort as a conditional use of the Property. (Twp. Remand Ex. 1 at 1; 9/5/2002 Test at 19.) However, there was a suspension of all development at the Property in 1989. (Twp. Remand Ex. 1 at 1.) Conneaut Bay Resort filed for bankruptcy after two years of operation and the Property was forfeited back to the mortgagee, McKinley Bank, which subsequently failed. After McKinley Bank failed, the Federal Deposit Insurance Corporation (FDIC) became the receiver of the Property until 1996. Then, in 1996, Commodore Home Systems purchased the Property for use as a Manufactured Home Community named Conneaut Meadows, but their development was put on hold in 1998. (Twp. Remand Ex. 1 at 1.)

The Church, in August 2002, submitted to the ZHB a zoning application for an interpretation, special exception and/or conditional use permit for the operation of the following pre-existing structures as an accessory use to their church/worship cen-

1. The General Commercial District allows, as a *conditional use:* "Recreation vehicle park" and "Campground." (Twp. Ordinance § 512.2(b),(c).)

ter: six chalets (for use as temporary housing for guests), a bathhouse (for use as restroom facilities), and a campground (for use by people wishing to have a camping experience as part of any event). The zoning application also included requests for the construction of the following uses as accessory to their church/worship center: an alter/prayer center (proposed to be constructed at 40x40 feet), a pavilion (for use as a picnic meeting area), a pond (for use as an area for quiet meditation), and hiking trails (proposed to be developed for leisurely walks through wooded areas). (ZHB decision, 11/19/2002, at 1–3.)

At a hearing held on September 5, 2002, James Sanderbeck, the Church's administrator, and Richard Synder, a project manager for the Church, gave testimony as to the proposed ministry campus. Sanderbeck testified to the campgrounds being utilized by visitors to the ministry campus who "would like to bring their RV, bring their tent . . . and actually have a camping experience as part of the event that is going on [at the ministry campus]." (9/5/2002 Test. at 27.) As for the hiking trails, Sanderbeck testified that hiking trails would be "designed for leisurely walking and strolling and light exercise as well as the spiritual time of enrichment." (9/5/2002 Test. at 29; *see also*, 2/5/2004 at 15–16.) He specifically rejected any notion that the trails would be designed for dirt bikes, four wheelers or other such vehicles. (9/5/2002 Test. at 29, 33.) In addition, several neighbors testified as to their concerns about the proposed ministry campus.

Based on the evidence presented, the ZHB made the following relevant findings:

2. Most of the requested uses of the property would be "accessory" uses to the operation of the worship center.

3. Concerned neighbors testified at the hearing in this matter that the primary neighborhood concern related to camping, noise, the use of four-wheelers and other motorized devices on the hiking trails, and concerns not relative to the ministry, but to some of the additional accessory uses proposed.

4. Although the northern end of the property was formerly used as a campground, that use was approved in 1986 as a conditional use for a recreational vehicle park. Subsequently, that use was abandoned and requests were made for a cluster development to be known as Conneaut Meadows Manufactured Home Community in 1997.

5. Clearly, the conditional use as a campground has been abandoned both in fact and by the intent of the former owners who were trying to develop it into a different type use.

6. Accordingly, the [ZHB] finds as a fact that the previous conditional use as a campground has been abandoned and simply cannot transfer to the current applicant.

7. The [ZHB], however, does find as to the remainder of the request, that accessory uses are appropriate to a worship center and although the Board believes that the number of accessory uses may be somewhat excessive for one specific parcel of land, it will in essence approve the bulk of said remaining requests with certain conditions as follows.

(ZHB, 11/19/2002, Findings of Fact (FOF) ¶¶ 2–7.) Based on these findings, the ZHB approved the request for the chalets, the bathhouse, house of prayer, pavilion and pond. It did not approve the request for the campground and hiking trails, mak-

ing the following relevant conclusions of law:

 5. Campground. The [ZHB] denies the request for a conditional use or interpretation of the Zoning Code that the [Church] may in fact use the *former* campground on this property. As indicated above, the former use as a campground was as a conditional use for recreational vehicles and said use has been abandoned by intent and in fact. The [ZHB] finds that a campground is not an appropriate accessory use for the ministry and will, in fact, create a series of additional problems for the neighboring land owners and accordingly, does not approve the same.

 . . .

 7. Hiking trail. The request for hiking trails is denied by the [ZHB] in that it would appear that those hiking trails would **relate primarily to the campground and campers,** which have also been denied. Additionally, there is significant neighborhood concern about the use of said trails for four-wheelers, dirt bikes, and other such vehicles. Accordingly, in an effort to cut down the effect on neighboring residences, said hiking trails shall not be permitted.

(ZHB Conclusions of Law (COL) ¶¶ 5,7) (emphasis added.)

The Church then appealed to the trial court arguing, *inter alia,* that: the prior use of the property as a campground was not abandoned; campgrounds are an appropriate accessory use to their church/worship center; objections by neighbors to the proposed hiking trails were adequately addressed by the Church; and, the ZHB failed to recognize the provisions of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §§ 2000cc–2000cc–5. (Notice of Land Use Appeal.)

Sometime after the hearing before the ZHB, but before a transcript of that hearing was made, the court reporter became ill and passed away, so the trial court, in an order dated December 16, 2003, remanded the case to the ZHB for additional evidence necessary for a complete record.[2] At the February 4, 2004 remand hearing, the Church produced the testimony of Bruce Ladebu, the President of the Church, Sandra Ghost, chairman of growth and development for the Church, and Erica Ladebu, co-senior pastor of the Church. Based on the testimony produced at the remand hearing and that previously produced,[3] the trial court affirmed the ZHB.

The trial court found that the campground and hiking trails were not an accessory use because those uses would be neither *secondary* nor *customarily or clearly incidental* to the church, religious, worship or ministry use of the Property. The Court stated that "the primary use of the [P]roperty is for a church . . . ." and the Church failed to produce evidence that a campground or hiking trails are "customarily" or "clearly" incidental to the use of a property for church, religious, worship or ministry purposes. (Trial Ct. Op. at 4–5)

2. Contained in the record is a Supplemental Adjudication of the Sadsbury Township ZHB, dated December 16, 2003, which provides additional conditions for the uses granted by the ZHB decision dated November 19, 2003. The trial court concluded that those conditions were filed too late and, thus, sustained the Church's appeal. In their briefs to this Court, the parties do not raise issues as to the legality of these additional conditions.

3. The parties stipulated to the inclusion of the "transcription" of the September 5, 2002 hearing in the record. (O.R.Ex. 6.)

(emphasis in original.) The trial court noted that, while the Church attempted to produce evidence that campgrounds were connected with church and worship facilities in other states and in various parts of the country, that testimony was both inadmissible hearsay and contained no evidence as to the circumstances under which the campgrounds came into being.[4] The court concluded that "campgrounds and overnight sleeping/lodging facilities are a *more distant extension* of the primary use of the property for church, religious, worship and ministry purposes." (Trial Ct. Op. at 7) (emphasis added.) As for the hiking trails, although the trial court did not completely understand why a property owner would need approval "to allow persons, lawfully on their property, to 'walk' or 'hike,' " it found that "hiking trails are not customarily or clearly incidental to a church, religious, worship or ministry facility."[5] (Trial Ct. Op. at 7–8.)

In addition, the trial court found that the prior conditional use as a "campground and RV park" had been abandoned, noting that the previous owner of the Property, Commodore Home Systems, intended to create a cluster development of doublewide mobile homes, thereby evincing an intent to abandon the use of the 24 acres as a campground. (Trial Ct. Op. at 8.) Finally, the trial court reasoned that there was no merit to an alleged violation of the RLUIPA, because "[n]either the [ZHB] nor [it] have made a decision based upon the fact that the appellant is a religious institution." (Trial Ct. Op. at 10.)

On appeal to this Court, the Church argues that: (1) a *campground with hiking trails* is an accessory use to a church/worship center; (2) the Township failed to meet its burden of proof as to the alleged abandonment of the prior use of the Property as a campground; (3) neighbors objecting to the hiking trails failed to meet their burden of proof as to the alleged detriment to the health, safety and welfare of the community; and, (4) the ZHB and the trial court failed to recognize the Church's rights against discrimination under the RLUIPA.

 As a preliminary matter, we reiterate the now well-settled principle that a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference. *Smith v. Zoning Hearing Bd. of Huntingdon Borough,* 734 A.2d 55, 57 (Pa.Cmwlth.1999), *pet. for allowance of appeal denied,* 561 Pa. 664, 747 A.2d 904 (1999). Such deference is appropriate because a zoning hearing board, as the entity charged with administering a zoning ordinance, possesses knowledge and expertise in interpreting that ordinance. *Id.* at 58. While it is undeniable that we are to interpret ambiguous language in an ordinance in favor of the property owner and against any implied extension of the restriction, such a restrictive reading of an ordinance is unwarranted where "the words of the zoning ordinance are clear and free from any ambiguity." *Isaacs v. Wilkes–Barre City Zoning Hearing Bd.,* 148 Pa.Cmwlth. 578, 612 A.2d 559, 561 (1992) (citing Section 603.1 of the Municipalities Planning Code (MPC)).[6] When

---

**4.** The record contains scores of web-page printouts from other church organizations that maintain a ministry campus similar to that proposed by the Church.

**5.** The trial court surmised that the Church might need approval if it plans to "construct or place hiking trails on the property," but rejected the Church's request, as it was before

them, for the use of hiking trails as an accessory use to a church building or worship center. (Trial Ct. Op. at 7–8.)

**6.** Act of July 31, 1968, P.L. 805, *as amended,* added by Section 48 of the Act of December 21, 1988, P.L. 1329, 53 P.S. 10603.1. That Section reads:

interpreting zoning ordinances, this Court relies on the common usage of words and phrases and construes language in a sensible manner. *Steeley v. Richland Twp.*, 875 A.2d 409, 414 (Pa.Cmwlth.2005). Because the trial court did not take additional evidence, this Court's scope of review is limited to a determination of whether the zoning hearing board committed an error of law or abused its discretion. *Great Valley Sch. Dist. v. Zoning Hearing Bd. of East Whiteland Twp.*, 863 A.2d 74, 78 n. 1, (Pa.Cmwlth.2004), *pet. for allowance of appeal denied*, 583 Pa. 675, 876 A.2d 398 (2005).

The Church first argues that the ZHB erred in its determination that a campground with hiking trails was not an accessory use to its church/worship center. The ZHB analyzed, separately, whether a campground was a permissible accessory use to the church/worship center and whether the hiking trails were a permissible accessory use and we address each denial.

As to the proposed campground use, the Church asserts that the ZHB's first and fifth conclusions of law are logically inconsistent because it could, on one hand, "utilize the chalets to provide temporary housing for guest speakers, ministers and others who are on the property for ministry purposes" (ZHB COL ¶ 1) but, on the other hand, it could not operate a campground (ZHB COL ¶ 5). The Church would use both the chalets and the campground to provide housing for visitors to the ministry campus, so, logically, there is no functional difference between the approved chalets and the impermissible campground.

> In interpreting the language of zoning ordinances to determine the extent of the restriction upon the use of the property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction.

The Church also asserts that the ZHB's adjudication ignores Pennsylvania jurisprudence providing that: (1) an accessory use may "customarily" or "clearly" exist even where there is no evidence that a majority, or even a substantial number, of similar properties are engaged in a similar accessory use, *Southco, Inc. and Contact II, Inc. v. Concord Twp.*, 552 Pa. 66, 713 A.2d 607 (1998), and (2) the interpretation of the ambiguous term "accessory use" be made in the landowner's favor, *see, e.g., Rabenold v. Zoning Hearing Bd. of Borough of Palmerton*, 777 A.2d 1257, 1263 (Pa.Cmwlth.2001). Applying these rules of law, the Church argues that the ZHB erred by not expansively interpreting the definition of "accessory use" to include a campground as accessory to its church/worship center.

The Church also claims that the ZHB determination is not in accord with precedent establishing that accessory uses for property having a primary religious use are to be broadly interpreted. As examples, the Church cites *Church of the Saviour v. Zoning Hearing Bd. of Tredyffrin Twp.*, 130 Pa.Cmwlth. 542, 568 A.2d 1336 (1989), which held that counseling was a church use where it was an integral part of the church's activities, and *Noah's Ark Christian Child Care Center, Inc. v. Zoning Hearing Bd. of West Mifflin*, 831 A.2d 756, 762 (Pa.Cmwlth.2003), *rev'd on other grounds*, 584 Pa. 9, 880 A.2d 596 (2005), which held that day care centers are customarily used in connection with churches, and the day care center at issue was a proper accessory use of a building (not a church) owned by the Second Baptist Church.

■ We conclude that the ZHB did not abuse its discretion or commit an error of law in its determination that a campground is not an accessory use to a church/worship center. The Township's definition of accessory use has the conjunctive requirement that the campground be: (1) *subordinate*, and (2) *customarily incidental* to the church/worship center. While the Church focuses on the word *customarily incidental* in the definition of accessory use, and broadly interprets it to include the campground, it does not address the requirement that the use also be *subordinate* to the principal use. Moreover, there is no logical inconsistency between the ZHB's determination that the chalets, but not the campground, were accessory to the church/worship center. Even if, *arguendo*, a campground could be considered *customarily incidental* to a church,[7] we conclude that, here, the evidence of record does not establish it as *subordinate*.[8,9]

Pursuant to its dictionary definition, *subordinate* means, "placed in or occupying a lower class, rank, or position: INFE-

RIOR...." Merriam-Webster's Collegiate Dictionary 1244 (11th ed.2003). Here, the extensive nature of the campground indicates that the campground will not be "inferior" to the church/worship center, thus not *subordinate* as required by the Ordinance definition of accessory use. Bruce Ladebu, the President of the Church, testified that the proposed campground would contain one-hundred twenty-seven camper tent units with sewer, water, cable and electric hookups. (2/5/2004 Test. at 13.) Moreover, his testimony provides that these amenities at the preexisting campsites were on the Property when purchased by the Church—evidently from the Property's preexisting conditional use as a campground/RV Park. *Id.* Furthermore, the previous use of the Property as a campground/RV park was approved as a conditional use, which is a type of principal use, and we conclude that nothing in the intervening years has changed it from its previous designation as a principal use of the Property.[10] The campground's previ-

---

**7.** The Church describes the accessory nature of their proposed campground based on the following factors: "[m]any evangelists, teachers and other ministers travel in motor homes or pull travel trailers as they itinerate from one ministry center to another"; conference attendees who travel with vehicles equipped for camping prefer the hospitality of a campground; and, "Churches and other Christian organizations who focus on outdoor worship, prayer, counseling and Bible study commonly have campgrounds on the ministry campus." (Church Br. at 9.)

**8.** The Church's citation to *Church of the Saviour* and *Noah's Ark Christian Child Care Center, Inc.*, for the proposition that this Court must broadly interpret what is an accessory use of property having a primary religious purpose, in effect, goes to the *customarily incidental* component of the accessory use analysis, not the separate requirement that the use be *subordinate*.

**9.** While cited by the Church for the proposition that an accessory use may "customarily"

or "clearly" exist even where there is no evidence that a majority, or even a substantial number, of similar properties are engaged in a similar accessory use, our Supreme Court in *Southco, Inc. and Contact II, Inc.* also applied a conjunctive requirement, similar to the instant case, requiring the accessory use be "secondary" to the principal use. Our Supreme Court reasoned that the proposed turf club would be "secondary" to the restaurant because, by law, the wagering aspects of the turf club would only constitute twenty-five percent of the proposed club/restaurant. *Id.*, 552 Pa. at 74–75, 713 A.2d at 611. This line of reasoning supports the analysis employed here that the ZHB did not err because the Church failed to establish the campground and hiking trails as subordinate to the church/worship center.

**10.** The Church could not be granted approval for the operation of the campground as a conditional use of the Property because the Property consists of a single parcel, and Section 502.5 of the Township Ordinance does

ous designation, its proposed size, and impact of use supports the ZHB's finding that it will not be an accessory use to the church/worship center (ZHB COL ¶¶ 5, 7); rather, the proposed reuse of the Property as a campground continues to comport with the Ordinance's definition of a "principal use," which is "the main or dominant use ... occurring on an individual lot." (Twp. Ordinance § 300.) Therefore, we conclude that the ZHB did not abuse its discretion or commit an error of law in its determination that a campground is not an accessory use to a church/worship center.

■ We next consider the ZHB's determination that the hiking trails would not be accessory to the church/worship center. When asked about the location of the hiking trails, Sanderbeck could not provide an exact location, just general areas of the Property where they were to be placed. (9/5/2002 Test. at 49.) Moreover, the Comprehensive Site Plan for the Property does not include hiking trails, and our review of the record reveals no evidence of the specific location, construction, or design of the proposed hiking trails. Accordingly, it is understandable that the trial court could not completely understand why a property owner would need approval "to allow persons, lawfully on their property, to 'walk' or 'hike.'" (Trial Ct. Op. at 7–8.) Without any evidence regarding the hiking trails, there is insufficient evidence of record to either approve or disapprove the hiking trails. Therefore, we must vacate the ZHB's determination regarding the hiking trails and remand for further findings of fact and conclusions of law.

■ Next, the Church argues that the Township failed to meet its burden of proof as to the alleged abandonment of the prior use of the Property as a campground.

The general requirement for abandonment in Pennsylvania is ascribed in *Latrobe Speedway, Inc. v. Zoning Hearing Bd. of Unity Twp.*, 553 Pa. 583, 592, 720 A.2d 127, 132 (1998), which provides for abandonment of non-conforming uses if the party claiming abandonment establishes that: (1) the landowner intended to abandon the nonconforming use, and (2) the landowner actually abandoned the use. Nevertheless, Section 905 of the Township Ordinance, EXPIRATION OF CONDITIONAL USE PERMIT, in relevant part, provides: "[i]f, *for any reason*, the conditional use shall cease or be abandoned for *2 years or more*, it shall no longer be considered as authorized unless a new application is filed and approved." (Twp. Ordinance § 905.)

Here, evidence of record establishes that the use of the Property as a campground *ceased* for a period of more than 2 years. There is no dispute that the use of the Property as a campground, pursuant to approval as a conditional use, ceased no later than 1989, thus constituting a period of more than two years of non-use as a campground and, pursuant to Section 905 of the Ordinance, requiring reapplication for a conditional use permit.[11] Therefore,

not permit more than one principal use on a particular parcel in the Township's General Commercial District.

11. In the first hearing before the ZHB, counsel for the Church asserted that it was applying for a conditional use permit. In response, counsel for the Township stated that, pursuant to Article 9 of the Ordinance, the Township Planning Commission and Board of Supervisors reviews applications for conditional

uses. Counsel for the Township then explained:

the Conditional Use was allowed on the application inasmuch as we knew that [the Church was] seeking relief from the situation, [sic] leave it there, so that it can be considered and if [the ZHB] feels that a Conditional Use is appropriate then it is already on the record to go to the Planning Commission and the Board of Supervisors.

we conclude that the ZHB did not commit an error of law or abuse its discretion in its determination that the previous use of the Property as a campground was abandoned.

The Church also argues that "neighbors," who were not parties to this case, failed to meet their burden of proof that the proposed use would be detrimental to the health, safety and welfare of the community. Those neighbors, whose testimony was referred to by the ZHB as "citizen comments," (see, e.g., 9/5/02 Test. at 89), testified to their concerns regarding the proposed campground and hiking trails. (9/5/02 Test. at 89.)

The Church specifically "takes issue" with statements alleging that the campground and hiking trails would create significant neighborhood problems. (ZHB, 11/19/2002, COL ¶¶ 5, 7.) It notes that the community and the campground have a 26–year history of co-existence and the noise and traffic from current neighbors (service station, beer distributor, quarrying operation) creates more nuisance and disturbance than a Christian campground would. Moreover, it cites to the buffer zone requirement found in the Township Ordinance (Twp. Ordinance § 620) and notes that it already has buffers between its neighbors. Finally, it notes that a neighbor's concern over ATV and motorbike use were addressed at the ZHB hearing, assurances were made that such uses would not be permitted and the local police would handle trespassers. In effect, the Church is arguing that the substance of the neighbors' complaints either are baseless or were already addressed at the hearing before the ZHB, so they should not have influenced the ZHB adjudication.

■ Nevertheless, the neighbors—who were not parties to the case nor objectors challenging the grant of a special exception/conditional use[12] permit—had no burden of production or persuasion. The Church is trying to extend conditional use or special exception cases, where objectors, in fact, have a burden of showing how a proposed use would negatively affect a community. *See, e.g., Evans v. Zoning Hearing Bd. of Easttown Twp.*, 40 Pa. Cmwlth. 103, 396 A.2d 889 (1979); *Greaton Properties, Inc. v. Lower Merion Twp.*, 796 A.2d 1038 (Pa.Cmwlth.2002); *Warren County Prob. Ass'n v. Warren County Zoning Hearing Bd.*, 50 Pa.Cmwlth. 486, 414 A.2d 398 (1980). The Church's argument, however, is faulty because of the fundamental differences between conditional use/special exception cases and accessory use cases.

■ In a conditional use or special exception case, the applicant first bears the burden of establishing that the application falls within the special exception or conditional use provision of the particular township ordinance. *See, e.g., Visionquest Nat., Ltd. v. Bd. of Supervisors of Honey Brook Twp.*, 524 Pa. 107, 112, 569 A.2d 915, 917 (1990); *see also, Manor Healthcare Corp. v. Lower Moreland Twp. Zoning Hearing Bd.*, 139 Pa.Cmwlth. 206, 590 A.2d 65, 70 (1991). Then, the burden of persuasion shifts to objectors to establish that a detrimental impact will result to the surrounding community, thus rebutting the legislative presumption, which exists in all conditional use or special exception cases, that the use is consistent with the health, safety and welfare of the community. *See Manor*, 590 A.2d at 70. However,

(9/5/2002 Test. at 18.)

**12.** "A conditional use is nothing more than a special exception which falls within the jurisdiction of the municipal legislative body rather than the zoning hearing board." *In re Cutler Group, Inc.*, 880 A.2d 39, 42 (Pa. Cmwlth.2005).

in an accessory use case, the objectors bear no burden of production or persuasion because they do not need to overcome a legislative presumption that the use is not detrimental to the health, safety and welfare of the community. Rather, the permissibility of an accessory use is dependent upon the objective criteria found in a township's ordinance, and is not, like conditional uses or special exceptions, presumptively valid.

■ The Church does not cite to and we cannot find any authority for the proposition that neighbors, who voice an opinion at the ZHB hearing concerning an application for an accessory use permit, have any burden of production or persuasion. The decision to accept these "citizen comments" (See, e.g., 9/5/02 Test. at 89) was within the discretion of the ZHB, and must be upheld if, as here, it is supported by substantial evidence of record. *See Bell Sav. and Loan Ass'n v. Zoning Hearing Bd. of Springfield Twp.*, 8 Pa.Cmwlth. 335, 301 A.2d 436, 437 (1973) (holding that the adverse interest of business competitor who testified against the grant of a variance should be considered in appraising the bias of his testimony, but to what extent was for the Board to determine). Before the ZHB, the Township solicitor and a member of the ZHB posed several questions regarding whether the hiking trails would serve as an "attractive nuisance" and aggravate preexisting problems with snowmobile riders using the Proper-

ty. (9/5/2002 Test. at 71–74; 82). Bruce Ladebu, the Church President, moreover, admitted in his testimony that employees of the Church have had to chase snowmobile riders from the Property. (2/5/2004 Test. at 17.) Accordingly, based on the evidence of a preexisting problem with snowmobiles, there was substantial evidence of record for the ZHB to conclude that the construction of hiking trails with the campground would present problems for the neighbors. Therefore, we find that the ZHB did not err in considering the neighbors' comments.

Finally, the Church argues that the ZHB and the trial court failed to recognize its rights against discrimination under the RLUIPA: The Church claims that the "ZHB's decision denying 'accessory use' status to the proposed campground and hiking trails (as affirmed by the Common Pleas Court) imposes a substantial burden on the [Church's] free exercise of religion and/or constitutes discriminatory treatment against the [Church] on the basis of religion, with the result that the decision must fall under the RLUIPA mandate." (Church Br. at 23.)

The provisions of RLUIPA effect a restriction on a zoning hearing board's[13] ability to either impose a substantial burden on a religious exercise, 42 U.S.C. 2000cc(a)(1), or treat a religious assembly or institution in unequal terms from similar, secular institutions, 42 U.S.C. 2000cc(b)(1).[14]

---

13. The scope of RLUIPA extends to any case in which:

(c) the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, *individualized assessments* of the proposed uses for the property involved.

42 U.S.C.2000cc(a)(2)(c) (emphasis added).

14. The relevant provision for the prohibition on an unequal imposition of secular and religious institutions provides:

(1) Equal Terms.
No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than *equal terms* with a nonreligious assembly or institution.

42 U.S.C.2000cc(b)(1) (emphasis added).

The general rule in RLUIPA against imposing a substantial burden on religious exercise provides:

No government shall impose or implement a land use regulation in a manner that imposes a *substantial burden* on the *religious exercise* of a person, including a religious assembly or institution, *unless* the government demonstrates that imposition of the burden on that person, assembly, or institution—

(A) is in furtherance of a *compelling governmental interest;* and

(B) is the *least restrictive means* of furthering that compelling governmental interest.

42 U.S.C.2000cc(a)(1) (emphasis added).

■ This Court has yet to analyze RLUIPA's provisions in the context of a decision of a municipal zoning hearing board; however, we draw guidance from an application of RLUIPA's "general rule" to land use cases by several federal courts. In *Freedom Baptist Church of Delaware County v. Twp. of Middletown,* the United States District Court for the Eastern District of Pennsylvania explained that RLUIPA proscriptions are not aimed at "intrusion at every level of government, displacing laws and prohibiting official actions of almost every description and regardless of subject matter." 204 F.Supp.2d 857, 873 (E.D.Pa.2002) (quoting *City of Boerne v. Flores,* 521 U.S. 507, 532, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997)). We note a finding, based on RLUIPA's legislative history, that RLUIPA "does not provide religious institutions with immunity from land use regulation." *Murphy v. Zoning Comm'n of Town of New Milford,* 148 F.Supp.2d 173, 184 (D.Conn.2001) (quoting 146 CONG. REC. S7774–01, S7776 (daily ed. July 27, 2000)). The substantial burden proscribed by RLUIPA is the same as that articulated in free exercise jurisprudence and includes:

"[f]oregoing or modifying the practice of one's religion because of governmental interference." *Id.* at 189. It has been recognized that a substantial burden pursuant to RLUIPA must constitute more than a mere inconvenience or incidental effect on the free exercise of a religious practice. *Midrash Sephardi, Inc. v. Town of Surfside,* 366 F.3d 1214, 1227 (11th Cir.2004) (reasoning that "a substantial burden can result from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct"), *cert. denied,* 543 U.S. 1146, 125 S.Ct. 1295 161 L.Ed.2d 106 (2005).

■ Here, the ZHB's denial of the Church's application for use of the campground and hiking trails as an accessory use does not impose a "substantial burden" on the Church's exercise of religion, because neither the Church nor its visitors will be required to forego or modify the exercise of their religion. *Murphy,* 148 F.Supp.2d at 189. Moreover, the record establishes that the Township contains other campsites nearby that are available for use by the Church's visitors. (2/5/2005 Test. at 31.) While there may be an "inconvenience" to visitors who wish to camp on the Property, such inconvenience here does not amount to a substantial burden on the practice of their religion; to find otherwise here would amount to an impermissible grant of immunity from land use regulation. *Murphy,* 148 F.Supp.2d at 184.

The Church also argues that an inference of discrimination comes from the land's previous use as a campground by a secular entity and its current denial for approval of the same use. We find that argument inapposite. The previous approval came in the form of a *conditional use,* and this land use appeal focuses on whether the campground is an *accessory use.* Here, the ZHB denied the Church's

requests because it is not an accessory use, which is an entirely different form of land-use than a conditional use.[15] As previously discussed, based on the Ordinance's requirement for permissible accessory uses, the ZHB determination is independently warranted and supported by the record, and, therefore, no inference of religious discrimination arises.

Therefore, in accordance with the foregoing analysis, we hereby affirm the ZHB's denial of the Church's application for use of the campground as an accessory use to the church/worship center, vacate the ZHB's denial of the Church's application for use of hiking trails as an accessory use to the church/worship center, and remand for further proceedings in accordance with this opinion.

### ORDER

**NOW,** January 17, 2006, in accordance with the foregoing opinion, the order of the Court of Common Pleas of Crawford County in the above-captioned matter is hereby AFFIRMED, in part, VACATED, in part, and this case is remanded for proceedings consistent with this opinion.

Jurisdiction is relinquished.

---

**15.** The Township requirements for a conditional use of land, which are defined as an "activity or use not permitted outright in [the] [O]rdinance but which may be permitted by the Board of Township Supervisors" (Ordinance § 300), are contained in Article 9 of the Ordinance.