**Joan HOPPE, Appellant**

v.

**ZONING HEARING BOARD OF the BOROUGH of PORTLAND.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2006.

Decided Oct. 19, 2006.

Reargument Denied Dec. 11, 2006.

Edmund G. Flynn, Stroudsburg, for appellant.

Scott M. Amori, Stroudsburg, for appellee.

BEFORE: SMITH–RIBNER, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Joan Hoppe (Hoppe) appeals from an order of the Court of Common Pleas of Northampton County (trial court) which denied Hoppe's appeal and affirmed the decision of the Borough of Portland Zoning Hearing Board (Board) which concluded that Hoppe did not qualify for a home occupation special exception. We affirm.

Hoppe resides at 700 Hillcrest Drive in the Borough of Portland with her husband, Richard and sixteen Cairn Terriers. The Hoppe's property is located in an R–10 medium density residential zone. Hoppe breeds the terriers in her home and offers them for sale.

A zoning officer cited Hoppe for not having a home occupation permit under Section 334 of the Zoning Ordinance of the Borough of Portland of 1966 (Ordinance). On April 1, 2005, Hoppe applied for a home occupation special exception permit in order to breed her dogs.

On May 23, 2005, a hearing was held before the Board. Hoppe testified at that hearing that she has sixteen terrier dogs that are her pets. Hoppe stated that she breeds her sixteen terriers in her home on a rotating basis, producing ten to twenty puppies each year which she offers for sale along with various pet products. Hoppe stated that when two of her dogs are ready to breed that they:

> [G]ive them the little lover's suite in the living room where they are left alone and nature takes its course and 60 to 65 days later we have puppies and then they are put in the nursery which is our laundry room downstairs and are kept away from everybody else so that the mommy and babies have the peace and quiet that they need for the mother to feel secure and the puppies to develop properly.
>
> When the puppies are being weaned ... they're brought out into the pen in the middle of the living room where they can be exposed to other dogs and people....
>
> They get their first shot between 7 and 8 weeks of age ... and then between 9 and 10 weeks of age they go to their new homes.
>
> ...

> Currently we have ... five females that are currently of breeding age.

Notes of Testimony (N.T.) at 13–15. Hoppe further testified that she maintains the dogs "[i]n our basement apartment." N.T. at 17. She describes her house as "a raised ranch with what was originally built as a carport and the basement was converted into a living space and then a two-car garage was added onto the original house with a room underneath it." N.T. at 17. Hoppe testified that the dogs they own are allowed throughout the house but that the puppies are kept strictly downstairs in the basement when they are nursing. Hoppe stated in pertinent part as follows:

> The nursing mommies are kept in the nursery which is off of a hallway in my bedroom.... The mommy is allowed out, she has access to my bedroom, and the laundry room is where the puppies— where I keep them contained for their own safety and that's isolated from the other dogs.... [S]he is not going to want anybody near her babies until they are older and at that point the puppies are brought out into the living room and kept in a pen in the middle of my living room ... and that's where they stay.

N.T. at 18–19. Hoppe further testified that she is not required by the State to have a kennel license. She currently has 23 dogs living or passing through her premises in the calendar year and a kennel license is only required by the State for more than 26 dogs. N.T. at 22. Hoppe also stated that the dogs "have run of the house, they have run of the yard." N.T. at 24.

Hoppe stated that she does not employ anyone. N.T. at 29. She further stated that the breeding activity is confined to the basement. N.T. at 29. She testified that their pets "are restricted upstairs to the part of the house that Richard occupies

and the other ones are downstairs in the part of the house that I occupy." N.T. at 30.

Hoppe testified on cross that the puppies waste is deposited "on newspaper ... they're pretty much paper trained...." N.T. at 32. She further stated that "[t]he adult dogs are in my fenced in yard ... and it's only the adult dogs that are out...." N.T. at 32. Hoppe further testified on cross as follows:

I have a friend who comes in every day during the day to let all the dogs out and spends an hour or so visiting with them and generally cleans up after the babies or anything that needs to be cleaned up.... And I also have someone that comes in once a week and thoroughly scrubs and disinfects the entire floor for me. I pay her and she comes sometimes more than once a week, but she's paid for coming once a week....

N.T. at 34–35.

The Board found that Hoppe "employs two non-family members in her business—one person to come to the Property to clean and disinfect the home and one person to let out the dogs and puppies during the days the Applicant works away from the Property." Board decision, Finding of Fact No. 16 at 3. The Board determined that Hoppe has a non-family member worker come to the house to let "the very subject of the business, the terriers out of the building ..." and allows the dogs and puppies to "have free run of the entire home, not just one-half the area of one floor...." Board decision at 3–4. The Board concluded that Hoppe "failed to meet the criteria of Section 334 and thereby qualify as a home occupation special exception under the Ordinance." Board

decision at 4. The Board denied Hoppe's application.

Hoppe appealed to the trial court and on February 16, 2006 the trial court, without taking any additional testimony, denied Hoppe's appeal. Hoppe now appeals to our Court.[1]

Hoppe contends that the trial court and the Board committed an error of law or abused its discretion in denying her a special exception home occupation permit.

Pennsylvania law provides that a special exception is a use to which an applicant is entitled as a matter of right unless the zoning hearing board determines that the use would adversely affect the community. *East Manchester Zoning Hearing Board v. Dallmeyer*, 147 Pa. Cmwlth. 671, 609 A.2d 604 (1992). However, the applicant must first establish that the proposed use meets the requirements in an ordinance for a special exception. *Id.* Only after this, is it presumed that the use is consistent with the health, safety and welfare of the community. *Id.* Then, once the requirements for a special exception are met, the burden shifts to the objectors to present evidence that the proposed use will have a detrimental effect on the public health, safety and welfare of the community. *Id.*

Pursuant to Section 553.6 of the Ordinance a home occupation is permitted under Section 334 as a special exception in a medium density R–10 zone. Section 334 of the Ordinance provides in pertinent part as follows:

HOME OCCUPATION. A business or office conducted in the home by members of the resident family provided:

---

1. Our review in a zoning matter, where no additional testimony or evidence has been taken, is limited to a determination of whether there has been a clear error of law or a manifest abuse of discretion. *Isaacs v. Wilkes Barre City Zoning Hearing Board*, 148 Pa. Cmwlth. 578, 612 A.2d 559 (1992).

that not more than two persons are employed who are not members of the family and that such persons shall be employed in the main building only; that not more than one-half of the area of one floor, or an entire basement, shall be used for such purposes; that signs indicating products made or services rendered shall be in accord with this ordinance; that adequate space for parking and loading shall be provided; and that no machinery or equipment that would produce noise, odor, vibration, light or electrical interference beyond the bounds of the immediate property shall be permitted.

Thus, Hoppe must meet the requirements under Section 334 before it is presumed that her use is consistent with the health, safety and welfare of the community.

The first question which arises is whether or not more than one-half of the area of one floor, or an entire basement, was used for breeding the dogs.[2] Hoppe testified that her dogs have the "run of the house, they have run of the yard." N.T. at 24. Hoppe further testified that the pets "are restricted upstairs to the part of the house that Richard occupies and the other ones are downstairs in the part of the house that I occupy." N.T. at 30. The Board determined that Hoppe's dogs and puppies have free run of the entire home. The trial court agreed.

Hoppe contends that the breeding activity is what should be limited to the basement or to one-half of the area of one floor. We disagree. The "pets" are part of the breeding process. Thus, because the dogs and puppies are permitted to be anywhere in the entire basement as well as on the first and only other floor of the home even though the two dogs who rendezvous for breeding are restricted to "the little lover's suite," that trysting place is on the first floor. Thus, Hoppe's home occupation uses more space than is permitted by the Ordinance.

The Board also found that the non-family members were not employed in only the main building. The Board found that "[a]ll breeding and sales activity takes place within the Applicant's house" and that one of Hoppe's employees comes "to let out the dogs and puppies during the days the Applicant works away from the Property." Board Decision, F.F. Nos. 10, 16 at 2–3. The Board determined that Hoppe has the non-family member worker come to the house "specifically to let the very subject of the business, the terriers out of the building." Board Decision at 3. The Board thereafter concluded that Hoppe did not meet the criteria for a home occupation because the non-family worker works outside of the main building.

The trial court in reviewing the Board's decision found that the Board interpreted the Ordinance such that a person who is letting the dogs out of the building is not limiting themselves to working in the "main building", as that person had let the subjects out of the main building. As it is reasonable to assume that dogs and puppies need to be let outside during the day, it is, however, not unreasonable to have an ordinance which does not provide for that kind of use as a special exception. As a hired worker is limited to being employed "in the main building only," such worker working outside the main building does not

---

2. According to the record, there is no question that signs indicating products made or services rendered are in accordance with the Ordinance, that there was adequate space for parking and loading and that no machinery or equipment produced noise, odor, vibration, light or electrical interference beyond the bounds of the immediate property. As such, we do not address these issues.

meet the requirements of a home occupation.[3]

Accordingly, we affirm the decision of the trial court.

### ORDER

AND NOW, this 19th day of October, 2006 the order of the Court of Common Pleas of Northampton County in the above-captioned matter is affirmed.

---

**3.** This decision does not prohibit Hoppe from applying for a special exception permit at a later date once she is able to show compliance with the conditions.