IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sandra Rollins,                          :
                    Appellant            :
                                         :
            v.                           :
                                         :
Middle Smithfield Township Zoning        :
Hearing Board                            :
                                         :
            v.                           :
                                         :   No. 42 C.D. 2016
Township of Middle Smithfield            :   Submitted: August 12, 2016


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED: December 8, 2016


            Sandra Rollins (Rollins) appeals from the Monroe County Common Pleas Court's (trial court) December 8, 2015 order denying her appeal from the July 16, 2015 decision of the Middle Smithfield Township (Township) Zoning Hearing Board (ZHB) which upheld the Township Zoning Officer's (Zoning Officer) October 7, 2014 enforcement notice (Enforcement Notice). The issue before this Court is whether the ZHB erred by upholding the Enforcement Notice. After review, we affirm.

            Rollins purchased the property at 6773 Timothy Lake Road in East Stroudsburg, Pennsylvania (Property) in 2007, but she has never lived there. The Property consists of two parcels totaling approximately one acre, and is located in an R-1 Residential Zoning District (R-1 Zoning District) (primarily single-family dwellings). The Property's permitted use is as a single-family residential home. At

the time Rollins purchased the Property, it was fully wooded, with a single manufactured home located thereon. Rollins subsequently cleared trees and obtained a permit to attach a second manufactured home to the existing one.[1] Although Rollins brought the second manufactured home to the Property, the homes remain unattached and neither is habitable.[2]

Neighbors began noticing items accumulating on the Property. The items included numerous vehicles, such as trucks, trailers and a bus with flat tires and broken windows, which was filled with other materials. Many of the vehicles had been transported onto the Property by tow truck and flatbed truck and were pushed into place. Other items on the Property included a camper, an electric golf cart, a drum barrel, pails of plaster, storage sheds, a Snapple refrigeration machine, two boats, a tarp-covered hot tub, rusting propane tanks and restaurant equipment, such as a large fryer and vending carts.

On October 7, 2014, the Zoning Officer issued the Enforcement Notice to Rollins listing the following violations:

> 1. Establishing a new use on, and/or changing the use of, the . . . [P]roperty, without first obtaining a Zoning Permit from the Zoning Officer in violation of [Sections] 010-060, [] 010-090 and [] 082-010 of the [Township's Zoning Ordinance (Ordinance)]. You have established a G5 Junkyard on the [P]roperty and have not obtained a zoning permit for this new and/or change in use on the [P]roperty.
>
> 2. Establishment of a G5 Junkyard use on the . . . [P]roperty in violation of [Section] 041-010, [Section] 041-020 and Table of Use Regulations Within Zoning Districts. The [P]roperty is located in the R[-]1 Zoning District and a G5 Junkyard is prohibited within the [R-1 Zoning] District.

---

[1] Rollins was permitted to attach the second manufactured home to the first, but Rollins was prohibited in the R-1 Zoning District from having two separate dwellings on the Property.

[2] The original manufactured home has no front steps and, thus, the front door is not accessible. The second manufactured home has a large hole in the side of the structure.

2

3. Establishment of a G5 Junkyard use on the . . . [P]roperty without first obtaining a Certificate of Compliance from the Zoning Officer in violation of [Section] 082-020.

Reproduced Record (R.R.) Item No. 2 at 1-2.

Section 020-020 of the Ordinance defines "[j]unkyard" as "land or structure used in whole or in part for the collection, storage, dismantling, processing and/or sale of junk." *Id*. "Junk" is defined as "any discarded material or article, including, but not limited to, scrap metal, scrapped, abandoned or junked motor vehicles, machinery, equipment, paper, glass, containers and structures. It shall not include, however, refuse or garbage kept in a proper container for the purpose of prompt disposal." *Id*. Further, "[j]unk [v]ehicle" is defined as:

> Includ[ing] any vehicle or trailer for which commercial gain is not the primary objective, and that meets any of the following conditions: (A) [c]annot be moved under its own power, in regard[] to a vehicle designed to move under its own power, other than a vehicle clearly needing only minor repairs; (B) [c]annot be towed, such as a trailer designed to be towed; (C) [h]as been demolished beyond repair; (D) has been separated from its axles, engine, body or chassis; (E) [i]ncludes only the axle, engine, body parts and/or chassis, separated from the remainder of the vehicle; and/or (F) [i]s unregistered and uninsured.

*Id*.

On October 27, 2014, Rollins appealed from the Enforcement Notice to the ZHB. The ZHB held public hearings on February 17, 2015 and April 21, 2015, at which several neighbors, the Zoning Officer and Rollins testified.

The Zoning Officer and the neighbors explained that Rollins had been using the Property to store abandoned material, debris and vehicles. The Zoning Officer testified that the manufactured homes on the Property are not occupied, and that one of the homes has a large hole in its side. According to the Zoning Officer, he also observed at the Property a bus, boats, campers, trucks, flatbed trailers, parts of

3

fences, two rusted shipping containers, inoperable junk vehicles, an old golf cart, stainless steel items, carts, doors, kitchen parts from stoves, storage sheds, trailers with flat tires and other apparently-discarded items. He presented aerial photographs showing the Property in 2005, 2008 and 2012 and the accumulation of vehicles and other items thereon. The neighbors testified that they rarely saw Rollins at the Property, and that numerous vehicles and objects and debris that occupied the Property were presumably brought to the Property at night. By the time the April 23, 2015 hearing took place, Rollins had removed some of the items from the Property, but many remained.

Rollins presented evidence showing that she had performed substantial work at the Property at significant cost, including installing a fence, landscaping and cleaning it up. According to Rollins, she had been required to erect a $10,000.00 barn, and had spent $3,000.00 upgrading the electric and over $4,000.00 on landscaping. She also testified that the Property has running water and working bathroom facilities and that she intended to repair the manufactured homes when her husband can assist her. She offered evidence that several of the vehicles, including the trailers and bus were properly registered, and explained that although the bus was not insured and had not been used since it was brought to the Property four years earlier, New Jersey law did not require that it be insured until it was operated. Rollins related that even though the trailers were not individually insured, she believed the trailers were insured by the vehicles that pull them.

Rollins admitted that no one has lived at the Property since 2007, and that the manufactured homes are not habitable, but Rollins and two witnesses testified that Rollins frequently hosted family barbecues there. Rollins further represented that nothing on the Property was junk, because it was useable. She stated that she used the food carts for business. She also admitted that she had last used one of the two boats 5-6 years before the hearing, and the other boat had been left on the Property by

4

an unknown individual. Rollins further acknowledged that materials she intended to use to repair the manufactured homes were stored inside one of the campers.

On July 16, 2015, the ZHB upheld the Enforcement Notice, finding that: (1) Rollins had used the Property as a junkyard in violation of the Ordinance; (2) Rollins had changed the Property's permitted use without obtaining a zoning permit; and, (3) Rollins had used the Property as a junkyard without applying for or receiving a Certificate of Compliance. The ZHB reasoned:

> What [Rollins'] intentions might be and what is and has been the current state of affairs are two different matters. What one hopes to do cannot be the distinguishing or determining factor. What one has done or failed to do and the resulting and ongoing condition of the structures and the lot is indicative of what both of these two [manufactured home] structures truly and currently are [. . .] and that is 'junk.'
>
> If an individual could simply accumulate uninhabitable structures for a period of close to seven years and claim that someday they [sic] hope to make the structure habitable and to join them together, these totally uninhabitable structures could remain so for many, many years. By way of example, if [Rollins] indicated that she intended to add damaged structures to the Property and rehabilitate them and put them together and do so within the space of 25 years, it would defy common sense to deny, after a fair number of years, that the structures were junk. If the mere expression of an intention would permit an ongoing collection or storage of such structures, then any zoning ordinance which would characterize such structures as junk and prohibit their collection or storage on someone's land would be incapable of enforcement. All one would have to do is to claim that they [sic] intend at some point to rehabilitate and join the structures. 2007 to 2015 is a period of eight (8) years. Simply intending to rehabilitate structures at some far[-]off date does not negate the current and ongoing activity of maintaining junk.
>
> The same reasoning holds true with respect to accumulated trailers, campers, boats, parts, tanks, etc., that have accumulated [sic] on the [P]roperty since [Rollins']

acquisition of the Property in 2007.  This is particularly so if the intention, as expressed by [Rollins], was to have all of these items on the Property be utilized in connection with residential use.  The Property has not been used as a residence since [Rollins] acquired the Property in 2007 and, instead, by her own admission, has been utilized for the storage of these materials (which she brought with her from New Jersey over a period of time after she acquired the Property – [] having been in storage in New Jersey prior to being located on the Property).

ZHB July 16, 2015 Decision and Order, R.R. Item No. 3 (ZHB Decision) at 6-7.  The ZHB concluded that "[t]he material stored on the premises which constitutes junk is . . . essentially all of the material[s] on the [P]roperty with the exception of . . . three [] licensed trailers, (two [] of which are believed to be on the [P]roperty) and the licensed and registered bus."  ZHB Decision at 17.

Rollins appealed from the ZHB's decision to the trial court, and moved to offer additional evidence.  On December 8, 2015, the trial court denied Rollins' motion and her appeal.[3]  Rollins appealed to this Court.[4]

---

[3]  In its responsive brief to this Court, the Township argues that Rollins waived her right to appellate review because she failed to file a pre-argument brief in support of her land use appeal in the trial court as required by local rules.  The Township further contends that Rollins inadequately briefed her argument to this Court.  Although "failure to comply with local rules concerning the briefing of post-verdict motions will result in waiver of issues for appeal purposes[,]" we decline to find that Rollins' failure to adhere to a local rule requiring a **pre-argument** brief constituted waiver, especially where the trial court did not find waiver.  *Commonwealth v. Prisznyak*, 452 A.2d 253, 254 (Pa. Super. 1982).  Further, with respect to Rollins' brief to this Court, although significantly lacking in legal authority, the brief is minimally adequate to set forth and argue her position.  Thus, we reject the Township's waiver argument.

[4] "Where a trial court has taken no additional evidence, our scope of review is limited to deciding whether the ZHB committed an abuse of discretion or an error of law."  *Boyer v. Zoning Hearing Bd. of Franklin Twp.*, 987 A.2d 219, 221 n.6 (Pa. Cmwlth. 2010).  A ZHB abuses its discretion if its findings are not supported by substantial evidence.  *See Valley View Civic Ass'n v. Zoning Bd. of Adjustment,* 462 A.2d 640 (Pa. 1983) "By 'substantial evidence' we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 640.

Rollins does not raise in this appeal that the trial court erred when it denied her motion to offer additional evidence.  Accordingly, that issue is not before the Court.

Rollins argues that the evidence presented to the ZHB did not establish that she is operating a junkyard on her Property, that the ZHB failed to liberally construe the Ordinance to favor the property owner, and that the ZHB disregarded Rollins' evidence.

Initially, we recognize that

> it is well settled that 'a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference. Such deference is appropriate because a zoning hearing board, as the entity charged with administering a zoning ordinance, possesses knowledge and expertise in interpreting that ordinance.' *Risker v. Smith T*[*wp.*] *Zoning Hearing B*[*d.*]*,* 886 A.2d 727, 731 (Pa. Cmwlth. 2005). Similarly, 'because [a township's zoning officer] is charged with the administration and execution of the [ordinance], his interpretation of the ordinance is entitled to deference and should not be disregarded unless shown to be clearly erroneous.' *McIntyre v. B*[*d.*] *of Supervisors of Shohola T*[*wp.*]*, . . .* 614 A.2d 335, 337 ([Pa. Cmwlth.] 1992).

*Kohl v. New Sewickley Twp. Zoning Hearing Bd.*, 108 A.3d 961, 968-69 (Pa. Cmwlth. 2015) (citations omitted). Further, "[i]n a land use proceeding, the [ZHB] is the ultimate fact-finder and the exclusive arbiter of credibility and evidentiary weight." *Joseph v. N. Whitehall Twp. Bd. of Supervisors*, 16 A.3d 1209, 1218 (Pa. Cmwlth. 2011). Notably:

> the language of the zoning ordinance should be interpreted, where doubt exists, in favor of the property owner and against any implied extension of restrictions upon the use of one's property. **However, this rule of construction is inapplicable where, as here, the words of the zoning ordinance are clear and free from any ambiguity.**

*Isaacs v. Wilkes-Barre City Zoning Hearing Bd.*, 612 A.2d 559, 561 (Pa. Cmwlth. 1992) (citations omitted; emphasis added).

The ZHB, as it was empowered to do, found the Township's witnesses credible, and was free to determine the weight to give the evidence. As recognized by the trial court, "the ZHB was presented with considerable evidence and testimony which established that most of the personal property on [Rollins'] land has been discarded and is therefore properly categorized as 'junk' under the [O]rdinance." Trial Ct. Op. at 8. Specifically, the trial court referenced the following:

> The Zoning Officer . . . testified that the primary mobile home does not have steps leading to the front door. N.T. 2/17/15, p. 23. He further stated that the second mobile [home] currently has a large hole in its side, exposing the interior to the elements. *Id*. Clark Edrehi owns property adjacent to [] Rollins' land. *Id*. at 62. He testified that the flooring inside of the primary mobile home has been removed in such a way that the ground beneath is visible. *Id*. at 68. He also witnessed vehicles being brought onto the [P]roperty by tow truck and flatbed trucks, but has never seen any of the vehicles being driven and considers them to be inoperable. *Id*. at 67. He further testified that the bus has broken windows, flat tires and is full of debris. *Id*. at 77. He has also observed a hot tub, golf cart, burning barrel drum, pails of plaster for dry walling, pieces of a fence, a 'Snapple' machine, restaurant equipment, milk containers, a carpet laid out on the ground and rusted propane tanks on the [P]roperty. *Id*. at 74, 77-[7]9. These items are clearly visible from Mr. Edrehi's property and he has never seen any of them being used. *Id*. John Henning owns the property across the street from [the P]roperty. N.T. 4/21/15, p. 157. He testified that he believes that the principle [sic] use of [the P]roperty is for storage because he has never seen anyone on the [P]roperty or witnessed anyone using the items or removing them from the [P]roperty. *Id*. at 158-[15]9. He also testified that he is concerned about what [Rollins] may have in the storage containers on her [P]roperty and the possible adverse environmental effects on the neighboring wells and nearby lake. *Id*. at 205. Maria Swenson owns property next to Mr. Edrehi. *Id*. at 162. She testified that the previous owners of [the P]roperty used it for residential purposes and that she has never seen anyone living on or maintaining [the P]roperty. *Id*. at 163.

8

Trial Ct. Op. at 8-9 n.2. Further:

> The aerial photographs provided by the [Zoning Officer] show an accumulation of materials unrelated to residential use since 2007. Several of [] Rollins' neighbors also testified that they have never seen anyone using the materials stored on the [P]roperty. The photographs of the [P]roperty submitted by the [T]ownship show deteriorating vehicles and debris on the [P]roperty. Additionally, [Rollins] presented proof of registration for two trailers and a bus currently situated on her [P]roperty. She did not present registration certificates for the remaining motor vehicles, allowing the ZHB to draw an adverse inference that they were unregistered.

*Id*. at 8-9.

We agree with the trial court that the aforementioned record evidence constituted substantial evidence to support the ZHB's decision. *See 8131 Roosevelt Corp. v. Zoning Bd. of Adjustment of the City of Phila.*, 794 A.2d 963 (Pa. Cmwlth. 2002). Although Rollins testified that the items on her Property were not discarded and that she intended to continue to fix up the Property, the ZHB, as fact finder, was free to assess Rollins' credibility and weigh her testimony in the context of the Township's witnesses' testimony. Because substantial evidence supports that the items and structures on the Property were discarded and/or abandoned, the ZHB did not err in concluding that the Property was being used as a junkyard. Accordingly, the trial court properly denied Rollins' appeal.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sandra Rollins,                              :
                    Appellant    :
                             :
            v.              :
                             :
Middle Smithfield Township Zoning            :
Hearing Board                                :
                             :
            v.              :
                           :    No. 42 C.D. 2016
Township of Middle Smithfield               :

# O R D E R

AND NOW, this 8th day of December, 2016, the Monroe County Common Pleas Court's December 8, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge