IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mount Joy Township,                          :
                Appellant                 :
                                     :
             v.                                  :
                                       :
Mount Joy Township Zoning Hearing :
Board, Herrick Building and               :  No. 2429 C.D. 2015
Excavating, Inc.                                :  Argued:  June 9, 2016


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI              FILED: September 15, 2016


Mount Joy Township (Township) appeals from an order of the Court of Common Pleas of Adams County (trial court) affirming the decision of the Mount Joy Township Zoning Hearing Board (Board) granting the appeal of Herrick Building and Excavating, Inc. from a notice of zoning violation. Because the language of the conditions imposed upon Applicant's variance that all equipment had to be stored inside the building is unambiguous, we reverse.


**I.**

The property at issue is owned by Laurel Catchings and is located at 3772 Baltimore Pike, Mount Joy Township, Adams County (Property).  It is

located in a Village Zoning District,[1] a mixed-use district that is intended to preserve the historic character of certain areas of the Township. The Property is surrounded by residential uses on either side and across the street.

Sean Herrick (Applicant) is the owner of Herrick Building and Excavating, an excavating and septic pumping business. In 2012, Applicant

---

[1] Section 110-21(D) of the Township Zoning Ordinance lists the following purposes for the Village District:

> (a) To preserve the historic character of the older villages and historic corridors of the Township and adjacent areas.
>
> (b) To promote an appropriate mix of retail, service, office, public, institutional and residential uses.
>
> (c) To avoid heavy commercial uses that are most likely to conflict with the historic character, and which are most likely to cause demolition of historic buildings.
>
> (d) To primarily provide for smaller-scale uses that typically utilize older buildings.
>
> (e) To avoid heavy commercial uses that would be incompatible with nearby homes.
>
> (f) To promote uses that will provide a pedestrian orientation and that promote bicycling.
>
> (g) To seek to extend the best features of older development into newer development.
>
> (h) To encourage shared and coordinated traffic access, as opposed to many driveways onto major roads.

(Supplemental Record (S.R.) at pp. 44-45.)

2

proposed to re-locate his company headquarters to the Property and entered into a ground lease with Laurel Catchings. At that time, Applicant submitted an application for variances to the Board proposing to construct a 40' by 60' structure on the Property for use as a contractor's headquarters with accessory storage use. Approximately 25% of the interior space of the proposed structure was allocated to offices associated with the contractor's headquarters, and 75% or approximately 1,800 square feet was proposed for the accessory storage use.

While a contractor's headquarters is a permitted use as of right in the Village District and storage is permitted as an accessory use, the variances were needed because the proposed structure did not meet the protective setback and buffer requirements of the Township Zoning Ordinance (Ordinance) applicable to the Village District.[2] Therefore, Applicant sought variances to obtain relief from the Ordinance's protective setback and buffer requirements.

At a July 18, 2012 hearing before the Board, Applicant testified at length regarding his proposed use of the Property and the equipment and materials that would be on site. With respect to the nature of his business, Applicant testified:

---

[2] Attachment 3 of the Ordinance states "Minimum setback of an industrial or commercial principal use from an existing residential building or a residential district boundary: 75 feet." (Appellant's Brief at p. 11.) Section 110-141(D) of the Ordinance provides that the required width of buffer yard for any newly developed or expanded commercial use, when the use providing the screening is abutting a residential district or within 250 feet of an existing dwelling, shall be 30 feet. (S.R. at p. 147.)

3

I'm in the excavating business. I do site work, septic systems, all kinds of grading, you know, with heavy equipment.

And we also operate a septic pumping business. And I have one septic truck. We do a lot of septic repair and that sort of thing and septic inspections, things along that nature.

. . .

I'd say that's kind of a good description of what I do, all kinds of general excavating and everything to do with septic systems.

(Reproduced Record (R.R.) at 25a.)

The Board expressed concerns about the use of the Property in the Village District[3] and Applicant testified extensively regarding the specific types of equipment and materials that would be on site:

Q: So what else would go on in this proposed building?

---

[3] For example, the Board stated:

What we are presented with here, what the Board is potentially presented with, is a situation where this is a Village Zone, not a Commercial Zone, and it's a residential neighborhood, not a commercial neighborhood.

And so the question is, how do we get compatibility? How do we get safety? How do we make sure that it fits right, okay, correctly, properly, legally in this environment? And that's all we're after.

(R.R. at 41a.)

A: We would probably store tools and equipment in there.

Q: What kind of tools and equipment?

A: Well, just things you generally wouldn't leave outside like a saw, wrenches, things like that to do that kind of business.

Q: And what kind of equipment would you have and how would it be stored?

A: I would probably keep maybe like one rubber tired backhoe there and there would be a dump truck, something like that. It's not my intention to keep my full equipment there.

Q: That would be stored elsewhere off site?

A: Yes. I have another property, too.

. . .

A: And I have absolutely no intention of storing any large excavating equipment on that lot for any reason at all.

. . .

Q: So there's not an expectation that you would be moving heavy equipment on and off that property on a regular basis or as a matter of fact on any basis?

A: Yeah, I would say probably not at all.

(R.R. at 26a-27a, 32a, 33a.) Applicant also testified that all materials necessary for his business would be delivered to the actual work sites, not to the Property.

5

Following deliberations, the Board submitted a motion to grant Applicant's request with some conditions, stating "we would like to make sure that you understand, Mr. Herrick, that you will be honoring the [Ordinance Section] 110-21(D)(5)(a), referring to the Historic District, that you keep it in compliance and that the Zoning Officer will be able to look at your plans and determine that you have been doing that aesthetically. **We would like . . . that the equipment would be stored inside of your building**. . . ." (R.R. at 92a) (emphasis added). In elaborating on this topic, the following conversation occurred:

> Mr. Kalasnik: Construction materials and construction equipment should be stored in the warehouse.
>
> Ms. DeFoe: In the warehouse.
>
> The Chairman: Right.
>
> Ms. DeFoe: Other than that, I think we're good and we –
>
> Mr. Kalasnik: How about septic materials, where are they to be stored?
>
> The Chairman: I understood the intention was to warehouse those; is that correct?
>
> Mr. Herrick: I just took for granted when you said materials, they were both the same.
>
> The Chairman: Okay. And that they would be warehoused?
>
> Mr. Herrick: (Nodded affirmatively).

(R.R. at 94a.)

6

In its 2012 written decision, the Board granted Applicant's request for variances from the 75 foot setback requirement and from the buffer yard requirements with 11 conditions, including the following:

> 5. That all equipment to the business be stored inside the building on the property;
>
> . . .
>
> 9. Construction materials and construction equipment must be stored in the warehouse building;
>
> 10. Septic materials must be stored in the warehouse building.

(R.R. at 117a.) Applicant did not request clarification of the conditions, file an appeal from the Board's decision or apply for a modification in the conditions.

## II.

On June 17, 2014, the Township Zoning and Code Enforcement Officer (Zoning Officer) issued a Notice of Zoning Violation to Applicant for failure to comply with condition numbers 5, 9 and 10 set forth in the Board's 2012 variance decision. The Township Planning Commission also recommended a finding that Applicant failed to comply with condition numbers 5, 9 and 10.

Applicant appealed the determination to the Board. At the August 2014 hearing, the Zoning Officer testified to and presented photographs showing

7

two septic trucks, a construction trailer, a pickup truck[4] with a landscaping trailer, a generator, and a pile of dirt on the Property, all of which were stored outside the warehouse. Applicant testified that he was still in the process of obtaining an occupancy permit for the building from the Department of Labor and Industry. Because he did not yet have a permit, he was not allowed to store his equipment, vehicles or materials inside the warehouse. Applicant also testified regarding his understanding of the conditions the Board imposed upon the variance, specifically that he did not believe the term "equipment" included vehicles – either pickups or septic trucks – and that he did not have to park his vehicles inside the building.

On September 18, 2014, the Board issued a decision and order granting the appeal and making the following relevant findings of fact:

> 9. The zoning officer's observation of equipment stored outside of the Applicant's building on the Property included trucks.
>
> . . .
>
> 14. The zoning officer determined that a generator, pickup truck, and landscaping trailer stored outside of the Applicant's warehouse building constituted violations of the August 22, 2012 decision of the Zoning Hearing Board.
>
> 15. The zoning officer also determined that construction material, a construction trailer, two septic pumping trucks

---

[4] In its brief to this Court, the Township concedes that a pickup truck does not fall within the items required to be stored within the warehouse under condition numbers 5, 9 or 10. (Township Brief at p. 28.)

constituted violations and a pile of dirt also constituted violations.

. . .

24. It was the Applicant's understanding that equipment referenced in the August 22, 2012 written decision did not include vehicles, such as pickup trucks, but instead referred to equipment such as backhoes and the similar large construction equipment.

25. The Applicant's understanding of "large construction equipment" included big off-road dump trucks, pans, and huge excavators.

26. Some of the dirt and other aggregate material on the Property are related to the ongoing construction of the warehouse building.

27. It is possible for the Applicant to store construction materials and equipment at an alternate site.

28. The equipment that the Applicant could store off-site would be off-road dump trucks, pans, some big scrapers, and similar items.

29. The Applicant is unable to store any of the vehicles presently parked on the Property at an alternate site.

. . .

31. The Applicant parked or stored certain "registered" vehicles on the Property of [sic] believing they were not "equipment" covered by the conditions in the August 22, 2012 written decision.

(Board's September 18, 2014 Decision at pp. 2-4.)

9

Based on these findings, the Board determined that the Zoning Officer's interpretation of the term "equipment" as used in the 2012 decision was significantly broader than Applicant's interpretation and understanding of same, and that the proper definition of the term was "a matter of understandable dispute." (*Id.* at p. 6.) It went on to state that "[a] review of the testimony and evidence presented at the July 18, 2012 Board Hearing where the Applicant's original application was heard does not substantially aid the Board in determining exactly and exhaustively the items or devices that were to be included as equipment." (*Id.*) It went on to note that the term "equipment" is not defined in the Ordinance, and that the dictionary definition was "so broad and all-inclusive that the Board is confident that its inclusion of the word equipment in the conditions the Applicant is alleged to have violated was not intended to be so broadly interpreted." (*Id.*) Based on that reasoning, the Board held that because condition numbers 5, 9 and 10 of its previous decision were ambiguous, and under Section 603.1 of the Municipalities Planning Code (MPC),[5] doubt as to the intended meaning of the contested language must be resolved in favor of the Applicant, the Board found no violation of the conditions with respect to the items and devices on Applicant's Property. However, the Board noted that the conditions still limit equipment storage on the Property, stating:

> Thus, the reference to equipment in the conditions would certainly include and thus restrict outside storage of heavy loading equipment, unregistered motor vehicles, uninspected vehicles, motor vehicles without license

---

[5] Act of July 31, 1968, P.L. 805, *as amended*, added by Section 48 of the Act of December 21, 1988, P.L. 1329, 53 P.S. §10603.1.

plates, large construction equipment, off-road dump trucks, excavators, backhoes and similar heavy construction equipment. Beyond these types of items, however, the Applicant is not restricted by the conditions regarding equipment storage.

(*Id.* at 8.)

## III.

The Township filed an appeal and, without taking any additional evidence, the trial court affirmed the decision of the Board. This appeal followed.[6]

The Township argues that the Board erred in not holding that Applicant was in violation of condition numbers 5, 9 and 10 of the variance, that the conditions were ambiguous, and that the Township failed to meet its burden of proof that Applicant violated said conditions.[7] In an appeal of a notice of violation to the zoning hearing board, the municipality bears the burden of presenting its evidence of the violation of the relevant zoning provisions, regulations or conditions in a decision or on a land use plan. *See Hartner v. Zoning Hearing Board of Upper St. Clair Township,* 840 A.2d 1068 (Pa. Cmwlth. 2004).

---

[6] In a land use appeal where the trial court does not take additional evidence, our scope of review is limited to determining whether the board committed an error of law or abuse of discretion. *Riverfront Development Group, LLC v. City of Harrisburg*, 109 A.3d 358, 363 n.8 (Pa. Cmwlth. 2015).

[7] Notice of violations are issued pursuant to Section 617 of the MPC, 53 P.S. §10617.

In this case, the issue is whether the conditions attached to the 2012 variance were sufficiently clear and unambiguous to put Applicant on notice as to what he was permitted to store on the Property. Or to put it another way, because the language here is embodied in an appealable decision, whether a person would be put on notice of what was granted or denied so that person could exercise any appeal rights to protect his interests.

A violation of a condition imposed by the zoning board is the equivalent of a violation of the zoning ordinance itself. *See Kulak v. Zoning Hearing Board of Bristol Township*, 563 A.2d 978, 980 (Pa. Cmwlth. 1989) (citing *Babin v. City of Lancaster*, 493 A.2d 141 (Pa. Cmwlth. 1985)). As the plain language generally provides the best indication of intent, when interpreting an ordinance, regulation or condition, construction of the provisions necessarily begins with an examination of the text itself. *Tri-County Landfill, Inc. v. Pine Township Zoning Hearing Board*, 83 A.3d 488, 509 (Pa. Cmwlth. 2014); *see* 1 Pa. C.S. §1921. It is well-settled that in examining the plain language of a statute, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa. C.S. §1903(a); *see also City of Hope v. Sadsbury Township Zoning Hearing Board*, 890 A.2d 1137, 1143-44 (Pa. Cmwlth. 2006) ("When interpreting zoning ordinances, this Court relies on the common usage of words and phrases and construes language in a sensible manner.").

"While it is undeniable that we are to interpret ambiguous language in an ordinance [or a condition] in favor of the property owner and against any

12

implied extension of the restriction, such a restrictive reading of an ordinance [or condition] is unwarranted where 'the words of the . . . ordinance [or condition] are clear and free from any ambiguity.'" *City of Hope*, 890 A.2d at 1143 (quoting *Isaacs v. Wilkes-Barre City Zoning Hearing Board*, 612 A.2d 559, 561 (Pa. Cmwlth. 1992)); *see also* section 603.1 of the MPC, 53 P.S. §10603.1. "An ambiguity exists when language is subject to two or more reasonable interpretations and not merely because two conflicting interpretations may be suggested." *Tri-County Landfill*, 83 A.3d at 510 (citing *Adams Outdoor Advertising, LP v. Zoning Hearing Board of Smithfield Township*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006)).

Here, the Board imposed conditions that state all equipment to Applicant's business, as well as construction materials, construction equipment and septic materials, must be stored in the warehouse building. The Township Zoning Ordinance does not define the terms "equipment" or "construction equipment" and neither does the MPC. However, the term "equipment" has been defined as "[t]he articles or implements used for a specific purpose or activity (esp. a business operation)," Black's Law Dictionary 578 (10th ed. 2014), and "the set of articles or physical resources serving to equip a person or thing: as (1): the implements used in an operation or activity." Merriam-Webster's Collegiate Dictionary 392 (11th ed. 2003). Under these definitions as well as the common usage of the term "equipment," a septic truck, generator and construction and landscaping trailers are clearly articles or implements used in the operation of a septic and excavating business, and the Board erred in determining that the language of the conditions was ambiguous.

13

The Board stated that the dictionary definitions of the term "equipment" were too broad and inclusive and, therefore, chose to ignore them in its analysis. However, not only is this the term the Board specifically chose to use in its initial decision, the condition required "[t]hat **all** equipment to the business be stored inside the building on the property." (R.R. at 117a) (emphasis added). If the Board had not intended such a broad, inclusive meaning, it would not have used the phrase "**all** equipment to the business." The fact that the Board issued not one but three conditions relating to equipment and materials, with each condition mandating that the equipment and materials be stored inside the warehouse, is equally instructive. If the Board had intended to limit the conditions to a particular subset of large, heavy construction equipment, then it certainly could and should have spelled this out in its conditions.

The Board, finding that the term "equipment" was ambiguous, is also belied by the fact that the parties understood the clear meaning of the word. There was extensive testimony during the first Board hearing regarding what equipment and materials Applicant used in his business and where they would be stored on the Property. Applicant clearly testified during the first hearing that he had no intention of storing any large excavating equipment on the Property, and that he would not be moving heavy equipment on and off the Property. Because such large, heavy construction equipment was not contemplated as being used or stored on the Property, the record does not support a finding that the Board intended the three conditions to be limited to this type of equipment.

14

Moreover, in its 2014 decision, the Board states that in this appeal from a notice of zoning violation, it may not "reconsider" its 2012 decision. Yet that is exactly what the Board has done by effectively rewriting condition numbers 5, 9 and 10. Applicant did not appeal from the Board's first decision, nor did he apply for a modification of the conditions imposed upon the grant of the dimensional variance. Rather, he appealed from an enforcement action relating to his use of the Property in a manner that violated the conditions of the variance. The Board erred in using this hearing as a means to re-write the initial conditions under the guise of ambiguity and, therefore, reconsidering its initial decision. *See Grand Central Sanitary Landfill, Inc. v. Zoning Hearing Board of Plainfield Township*, 625 A.2d 115, 117 (Pa. Cmwlth. 1993). It took three separate, distinct conditions regarding equipment to Applicant's septic and excavating business, construction equipment and materials and septic materials, and boiled them down to one condition regarding heavy or large construction equipment.

The Township is correct that these modifications effectively void the 2012 unambiguous conditions with respect to Applicant's septic business. Applicant's septic trucks clearly fall within condition number five regarding "equipment to the business," yet under the Board's new interpretation of the conditions, the septic trucks would not be required to be stored inside because they are not heavy construction equipment. The Board tries to justify its holding by stating that "[t]here clearly was some intent to limit the equipment permitted to be stored outside of the Applicant's warehouse building and, indeed, at paragraph nine of the conditions the equipment is specified as 'construction materials and construction equipment.'" (Board's September 18, 2014 Decision at p. 6.)

15

However, this interpretation of the initial conditions renders condition number five mere surplusage. *See Riverfront Development Group, LLC v. City of Harrisburg*, 109 A.3d 358, 366 (Pa. Cmwlth. 2015); *Tri-County Landfill*, 83 A.3d at 509 ("every statute [or condition] shall be construed, if possible, to give effect to all its provisions so that no provision is 'mere surplusage.'") (citing 1 Pa. C.S. §1921(a)).

The conditions to the variance are unambiguous and must be applied as written. Applicant's failure to store his septic trucks, trailers and generator inside the warehouse clearly violates condition numbers 5, 9 and 10 and the Board erred in disregarding the evidence of record and determining otherwise. Accordingly, the decision of the trial court is reversed.

DAN PELLEGRINI, Senior Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mount Joy Township, : 
                 Appellant : 
     : 
         v. : 
     : 
Mount Joy Township Zoning Hearing : 
Board, Herrick Building and : 
Excavating, Inc. : No. 2429 C.D. 2015

**O R D E R**

AND NOW, this 15<u>th</u> day of <u>September</u>, 2016, the decision of the Court of Common Pleas of Adams County in the above captioned case dated October 28, 2015, is reversed.

                         _____
                         DAN PELLEGRINI, Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mount Joy Township, : 
     Appellant : 
: 
     v. : 
: 
Mount Joy Township : 
Zoning Hearing Board, : 
Herrick Building and :  No. 2429 C.D. 2015
Excavating, Inc. :  Argued: June 9, 2016


BEFORE: HONORABLE P. KEVIN BROBSON, Judge
     HONORABLE ANNE E. COVEY, Judge
     HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

DISSENTING OPINION BY
JUDGE COVEY       FILED: September 15, 2016

    I respectfully dissent from the Majority's conclusion that the condition imposed upon Herrick Building and Excavating, Inc.'s (Applicant) variance that all equipment be stored inside the building is unambiguous.  The issue before the Court is whether the conditions attached to the 2012 variance (Variance Conditions) were sufficiently clear and unambiguous as to put Applicant on notice of what it was permitted to store at the real property located at 3772 Baltimore Pike, Mount Joy Township (Property).  Because the Mount Joy Township Zoning Hearing Board's (Board) interpretation of its conditions is entitled to great weight and deference, and the Board was required to construe the conditions and resolve doubts in Applicant's favor, I would affirm the trial court's order upholding the Board's decision as it relates to Applicant's septic truck, and remand on the issue of whether the generator and the trailers were for use in Applicant's business or were related to the warehouse building's construction.

It is undisputed that the Board's 2012 Variance Conditions required Applicant to store in the permitted warehouse building "all equipment to the business," "construction materials and construction equipment," and "septic materials." Reproduced Record (R.R.) at 117a. Because Applicant did not seek clarification of or appeal from the Variance Conditions, it was bound by them.[1]

The Majority holds that the definition and common usage of the term "equipment" in the Board's Variance Conditions is unambiguous. The Majority defines "equipment" as

> '[t]he articles or implements used for a specific purpose or activity (esp. a business operation).' Black's Law Dictionary 578 (10th ed. 2014), and 'the set of articles or physical resources serving to equip a person or thing: as . . . the implements used in an operation or activity.' Merriam-Webster's Collegiate Dictionary 392 (11th ed. 2003).

Majority at 12. Based thereon, the Majority determined that the septic truck, generator, and construction and landscaping trailers are "equipment" used in Applicant's operation of its septic and excavating business.[2] However, the record in this case belies such a conclusion. I will first address the septic truck, then the generator and trailers.[3]

Under the Majority's definition, virtually all vehicles that are used to transport employees and move materials to and from work sites would be considered

---

[1] Because "a party waives its right to seek review of conditions imposed by a zoning hearing board if that party has failed to [timely appeal them]," *Twp. of Harrison v. Smith*, 636 A.2d 288, 290 (Pa. Cmwlth. 1993), Applicant waived its right to appeal from the Variance Conditions.

[2] Because it is undisputed that the dirt pile was from the warehouse building's construction, rather than Applicant's business, it does not appear to be at issue in this appeal. *See* R.R. at 142a, 156a-157a.

[3] At the July 18, 2012 Hearing, Herrick stated that he would only use one septic truck on the Property. However, during the August 5, 2014 Hearing, the Zoning Officer testified that she observed two septic trucks on the Property. Herrick did not dispute the number of trucks on the Property, but rather focused on clarifying what was deemed equipment to be stored inside the building. As a result, I simply note the inconsistent number of septic trucks.

AEC - 2

equipment. However, it is evident based on the July 18, 2012 Board hearing (2012 Hearing) record that the Board did not intend for Applicant to store the septic truck inside the warehouse.

During the August 5, 2014 Board hearing (2014 Hearing), the Zoning Officer acknowledged that the Variance Conditions did not specifically reference "vehicles," and that truck parking outside a construction headquarters is permissible. *See* R.R. at 137a-138a, 146a-149a.[4] Moreover, Herrick testified at the 2014 Hearing that, after the 2012 Hearing, he was under the impression that the Board's conditions referred to tools and large construction equipment, including "backhoes, off-road dump trucks, pans, . . . some big scrapers and, . . . things like that," rather than licensed, inspected and tagged motor vehicles, like the pickup truck and septic truck the Zoning Officer observed on the Property. R.R. at 164a; *see also* R.R. at 156a-157a, 165a-166a, 168a. He stated that since he did not consider his vehicles "equipment," he did not believe that they had to be parked inside the building. *See* R.R. at 157a.

Herrick explained:

Q. So you were thinking you didn't have to move the equipment because it wasn't equipment to you when [the Zoning Officer] told you that you needed to?

A. Well, I was thinking in my mind that it would make sense that if you're talking about a vehicle that is a licensed motor vehicle, you know, that –

Q. Right.

A. -- has a plate on it, an inspected vehicle –

Q. Right.

---

[4] Although the Notice of Zoning Violation did not precisely specify the violations, during the 2014 Hearing, the Zoning Officer testified that a generator, a pickup truck, a landscaping trailer, a construction trailer, a pile of dirt and two septic trucks were located outside the building in violation of the Variance Conditions. *See* R.R. at 134a, 141a-142a, 147a.

A. – that that would be acceptable to be in the building, outside the building, parked there or, you know.

. . . .

Q. So you didn't think you had to move the things because you didn't – you didn't view them as equipment, you just viewed them as vehicles is what I'm saying.

A. Yes.

R.R. at 166a.

To understand the context of the conditions, the Board and the trial court reviewed the 2012 Hearing transcript. At the 2012 Hearing, Herrick testified: "I'm in the excavating business. I do site work, septic systems, all kinds of grading, . . . with heavy equipment. And we also operate a septic pumping business. And I have one septic truck. We do a lot of septic repair . . . and septic inspections, things along that nature." R.R. at 25a. When asked what specific equipment would be used in its business, Herrick explained:

A. Well, [Applicant's employee] would probably come there in the morning and then get whatever work truck he's going to use and then go to work.

Q. So what else would go on in this proposed building?

A. We would probably store tools and equipment in there.

Q. **What kind of tools and equipment?**

A. Well, just things you generally wouldn't leave outside like a **saw, wrenches, things like that** to do that kind of business.

Q. And **what kind of equipment** would you have and how would it be stored?

A. I would probably keep maybe like **one rubber[-]tired backhoe** there and there would be **a dump truck**, something like that. It's not my intention to keep my full equipment there.

AEC - 4

Q. That would be stored elsewhere off site?

A. Yes.  I have another property . . . .

Q. Okay.

A. Things that wouldn't be the proper size to go on that lot, we wouldn't have any intentions of bringing them there.  It would be too hard to get them in and out.  It wouldn't be feasible. . . .

R.R. at 26a-27a (emphasis added).  Herrick later clarified:

Q. . . . Did you mention there's going to be a dump truck that's going to be stored there?  Is that going to be picking up and moving material?

A. No, sir.

R.R. at 30a.  "I have absolutely no intention of storing any large excavating equipment on that lot for any reason at all."  R.R. at 32a; *see also* R.R. at 33a-34a, 46a.  Herrick added that materials such as sand, fill dirt and pipes for each job would be delivered directly to the worksites, rather than to the Property.  *See* R.R. at 30a-31a, 33a.  Moreover, no portable toilets will be stored on the Property, and septic removed from customer homes would be taken directly to waste treatment plants.  *See* R.R. at 46a-48a.

At the 2012 Hearing, the Board Chairman quoted Section 110-21, Paragraph 5 of the Township's Zoning Ordinance (Zoning Ordinance), subsection E that "[t]he purpose of a [V] Zone is to avoid heavy commercial uses that would be incompatible with nearby homes."  R.R. at 36a.  Also, in response to the Chairman's concern that local children may be drawn to equipment stored outside the building, Herrick said he "[u]nderstood."  R.R. at 35a.  He further expounded:

A. We keep using the term heavy equipment.  I don't think that's a proper label for what I intend to do with it.

Q. Pick your biggest piece of equipment that would likely be on site.

AEC - 5

A. Like a **backhoe**[-]**size piece of equipment** and like one of those **tiny mini excavators**, . . . that you can pull with a pickup truck.

. . . .

Q. And that would be your intent to put it in there?

A. **We have a single**[-]**axle septic truck**, not one of those huge ones that you see with three and four axles on the back, just a single axle.   And **during cold weather we must pull that inside** so it doesn't freeze, you know –

Q. Hydraulics?

A. Yeah. And it's got valves on the back; and during cold weather, they freeze and you can't do the job with it.

But we have a lot of pieces of equipment that are really small like a **little jetter machine** that you push out to a job site that cleans sewer lines with – you know, like at somebody's house if they have a clogged line.

R.R. at 42a-43a (emphasis added).

Herrick **described his septic truck as a vehicle** based on his description of the axles and vehicular functions and distinguished it from a heavy piece of equipment which was the focus of the Board's questions.  His testimony continued:

Q. So most of the vehicles . . . on this lot would be pickup trucks, that class?

 A. Right. . . .

R.R. at 46a.  Specifically regarding the septic truck, Herrick described:

A. [The Township] referred to it as a hunting wagon, but that's not really the case.

A hunting wagon is something the farmer pulls out in the field and spreads manure.  This is a **transport vehicle** that has to be licensed with [the Department of Environmental Protection (DEP),].

. . . .

AEC - 6

[and] goes to licensed sites. There's all kinds of [commercial driver's license (CDL)] regulations and tank regulations and . . . we're in full compliance with that.

Q. And is that going to be stored on site?

A. Yes.

Q. **That will be stored on site**?

A. **Yes**.

R.R. at 47a-49a (emphasis added).

Thus, the 2012 Hearing record makes clear that Applicant intended to use the septic truck to drive to different jobs, pump the tanks at different sites, and empty them at treatment plants. *See* R.R. at 47a. Herrick distinctly stated that the septic truck would be stored on site, but did not specify that it would be kept inside the building, except during cold weather. *See* R.R. at 43a, 48a. The 2012 Hearing testimony reflects his interpretation that his septic truck was a vehicle rather than "equipment," as that term is used in the Variance Conditions. Nor did the Board have any discussion to the contrary.

The record demonstrates the confusion between the Board and the Applicant regarding what the Board meant by "equipment" but it did not include the septic truck as being considered equipment. Rather, it focused on what specific items would be at the Property. When the Board imposed the Variance Conditions, the Board expected that Applicant's equipment would be stored within the building. However, since Herrick understood that Applicant's septic truck was excluded from the term "equipment," as the Board said nothing to the contrary during the questioning at the hearing, it is understandable that Herrick interpreted equipment to exclude those vehicles. The testimony clearly highlights that what is deemed "equipment" is, and was in this case, subject to interpretation. Thus, "equipment" as referenced in the Variance Conditions is ambiguous.

Moreover, the Majority states that if the Board had intended to limit the conditions to a particular subset of large, heavy construction equipment, the Board should have included those descriptions in the Variance Conditions. To the contrary, the Board's questioning at the hearing makes it clear that it did not want the Applicant to store "heavy equipment" at the Property because it was contrary to the zoning. However, the Board never indicated that it considered the Applicant's septic truck as "equipment" or "equipment" that it did not want stored at the Property. Although the Board's Variance Conditions required "[t]hat all equipment to the business be stored inside the building on the [P]roperty," the Board was not then aware that the Township had a different interpretation of "equipment" and, therefore, no clarification was necessary.

In addition, the Majority claims that the Board effectively rewrote the Variance Conditions under the guise of ambiguity. Rather, the Board recognized the overly-broad plain meaning of the term "equipment" and used the hearing testimony as a means to shed light on the definition. The Board clarified in its 2014 decision that the references to "equipment" in the Variance Conditions meant the storage of "heavy loading equipment, unregistered motor vehicles, uninspected vehicles, motor vehicles, motor vehicles without license plates, large construction equipment, off-road dump trucks, excavators, backhoes, and similar heavy construction equipment," and declared that, going forward, any items beyond that list were not "equipment." Board Dec. at 8. Therefore, the Board did not reconsider or rewrite the conditions, but rather illuminated the ambiguity and clarified the use of the term.

Moreover, in construing "equipment" the Board applied the mandate contained in Section 603.1 of the Pennsylvania Municipalities Planning Code (MPC)[5] that, where doubt exists, the language of a zoning ordinance should be interpreted "in

---

[5] Act of July 31, 1968, P.L. 805, *as amended*, added by Section 48 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10603.1.

favor of the property owner and against any implied extension of restriction[s]" upon the use of one's property. 53 P.S. § 10603.1. "[O]rdinances are to be construed expansively, affording the landowner the broadest possible use and enjoyment of his land." *Tink-Wig Mountain Lake Forest Prop. Owners Ass'n v. Lackawaxen Twp. Zoning Hearing Bd.*, 986 A.2d 935, 941 (Pa. Cmwlth. 2009). "This Court has recognized that a violation of a [zoning board-imposed] condition is the equivalent of a violation of the zoning ordinance." *Kulak v. Zoning Hearing Bd. of Bristol Twp*., 563 A.2d 978, 980 (Pa. Cmwlth. 1989). Because "[a] violation of a condition is, in essence, a violation of the ordinance," this Court can infer that a condition can be interpreted like an ordinance. *Id.* Accordingly, we hold that, like ordinances, conditions imposed upon the granting of a variance, must be construed in the landowner's favor.

In *Kohl v. New Sewickley Township Zoning Hearing Board*, 108 A.3d 961 (Pa. Cmwlth. 2015), this Court affirmed the trial court's determination upholding a zoning board's conclusion that an applicant's dog rescue operation was a non-permissible "kennel" under the township's zoning ordinance. The trial court recognized that the dictionary definition of the term "kennel" was subject to differing interpretations, and that application of a broad interpretation would have led to an absurd result. Accordingly, the trial court concluded that the term "kennel" was ambiguous and, thus, properly construed the term in the landowner's favor.

Here, the Board similarly reviewed the dictionary definition in light of Applicant's and the Township's interpretations and deemed the term "equipment" used in the Variance Conditions overly broad. Under the circumstances, the Board properly concluded that the term "equipment" was ambiguous, and thus, was authorized to construe its conditions and resolve doubts in Applicant's favor. Accordingly, the Board clarified the conditions and specifically defined what "equipment" included in this case. In doing so, the Board did not rewrite the

Variance Conditions, but rather clarified the ambiguity. Because the term "equipment" included in the Board's Variance Conditions was ambiguous, the Board properly clarified it. Therefore, I would affirm the trial court's order insofar as it relates to Applicant's septic truck.

With respect to the generator and trailers, it is unclear based upon this record whether they were on the Property for use in Applicant's septic and excavating business, or were in use for the warehouse building's ongoing construction. Accordingly, I would remand to the trial court with the instruction to remand the matter to the Board to make that determination.

_____
ANNE E. COVEY, Judge