**NORTHAMPTON AREA SCHOOL DISTRICT, Metrotek Electrical Services, Co. a/k/a Alliance Energy Group, LLC, Appellants**

**v.**

**ZONING HEARING BOARD OF the TOWNSHIP OF LEHIGH, Northampton County and Lehigh Township.**

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2012.

Decided April 9, 2013.

---

**5.** Because CCO does not have standing to appeal, we need not address its remaining issues.

Blake C. Marles, Bethlehem, for appellants.

Thomas M. Caffrey, Allentown, for appellee Zoning Hearing Board of the Township of Lehigh, Northampton County.

James F. Preston, Bethlehem, for appellee the Township of Lehigh.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge McGINLEY.

Northampton Area School District (School District) and Alliance Energy Group, LLC (Applicants) appeal from the order of the Court of Common Pleas of Northampton County (common pleas court) which affirmed the Lehigh Township Zoning Hearing Board's (ZHB) denial of Applicants' request for approval to install a solar energy field as an "accessory use."

The School District owns nineteen acres in the Agricultural/Rural Residential (A/RR) Zoning District of Lehigh Township (Property). The principal use of the Property is "public education." The "Lehigh Elementary School" (School) is located on the Property.

In October 2010, Applicants sought approval to install a solar energy field on

four acres located at the southeast corner[1] of the Property to generate electric power to the School. The solar energy field would consist of 7,000 solar energy panels, divided into 280 individual units, with each complete unit being approximately 13.5 feet wide and 26 feet long.

The Zoning Officer denied the application and opined that the proposed use constituted a "second commercial principal use" of the Property.[2] The Zoning Officer also concluded that the Zoning Ordinance did not provide for the proposed use and, therefore, the use required a Conditional Use Hearing before the Board of Supervisors.

On December 8, 2010, Applicants appealed to the ZHB. Applicants argued that the proposed use was not a second principal use. According to Applicants, the purpose of the solar energy field was "to support the existing use," i.e., generate solar energy that would be used to meet the energy needs of the school. It would not be used to supply energy to any other party. They argued that the use was a permitted "accessory use" under Section 180–25(A) entitled "Accessory Uses—Alternative Energy Systems" which provided: *"Solar energy units shall be permitted in any zone and subject to the requirements of that zone."* (Emphasis added). In the event the ZHB deemed the use a "second principal use" Applicants sought "special exception" approval. Two public hearings were held on February 2, 2011, and February 17, 2011.

Applicants presented the testimony of Robert Toedter (Toedter), a licensed professional engineer. Toedter testified that the solar energy field was desirable because the School District would obtain energy at a significantly lower cost, and save between two and four million dollars over a twenty-year term. Hearing Transcript, February 2, 2011, at 25–26; Reproduced Record (R.R.) at 51 a52a. He explained that the solar energy field would also provide an educational component because the elementary and high schools could run programs regarding the application of solar energy, power and electricity. H.T. at 24; R.R. at 50a. He explained that the solar energy panels would comply with all building codes, and comply with all appropriate setbacks and requirements of the A/RR Zoning District. He also confirmed the solar energy panels would create no noise, no glare, no vibration, and, in his opinion, there were no deleterious effects on the surrounding neighborhoods. H.T. at 27–28; R.R. at 53a–54a. The solar energy field would be surrounded by vegetation. There would be no soil disturbance, and the solar energy panels would be weather and wind resistant.

On March 10, 2011, the ZHB issued a written decision which consisted of two separate rulings. First, the ZHB concluded that the proposed use did not constitute a "second principal use" which required "special exception" approval. The ZHB also rejected Applicants' argument that Section 180–25(A) of the Zoning Ordinance permits a solar energy field as an accessory use "as of right" in the A/RR Zoning District.

■■■■ On the second issue, the ZHB reasoned that Section 180–25(A) allows so-

1. This is an area that slopes downwardly to the south behind the School and behind a power line that serves the School.

2. Section 180–30 of the Lehigh Township Zoning Ordinance (Zoning Ordinance) prohibits more than one principal use per lot.

The Zoning Officer determined that Applicants' request was a request to engage in a second use, i.e., an independent solar power generation use on the same lot as an existing principal public school use.

lar energy units [3] subject to the "requirements of the zone." The ZHB noted that the Property was located in the A/RR Zoning District, which permits private and public schools by special exception. The ZHB looked to Section 180–94(A)–(G) [4], which outlines the special exception standards for public and private schools in the A/RR Zoning District, specifically Section 180–94(G) which permits "accessory uses customarily incidental" to a public and private school. The ZHB concluded that "in accordance with the requirements of the A/RR District—the zone in which the subject property is located, the proposed solar field is permitted only if it constitutes an 'accessory use customarily incidental' to a public or private school." ZHB Decision, March 10, 2011, at 15.

The ZHB relied on *Hess v. Warwick Township Zoning Hearing Board*, 977

---

**3.** The ZHB now, for the first time, contends that Applicants failed to meet their burden of proving the proposed use falls within the category of "solar energy units" in Section 180–25(A). However, in its Decision, the ZHB never found or concluded that the proposed solar energy field or "solar energy array", as it was also referred to in the Decision, did *not* fall within the contemplated meaning of "solar energy units." The ZHB noted that the term "solar energy units" was not defined, but it went on to render its Decision "assuming that" the proposed solar field constitutes solar energy units. ZHB Decision, March 10, 2011, at 14. Applicants argue that it is unfair for the ZHB to now claim that they failed to meet their burden to prove that the solar energy field qualifies as "solar energy units." Applicants argue that they, nevertheless, presented sufficient evidence to establish that the use would be used to generate solar energy for the principal use, i.e., energy from the sun, regardless of whether it is called a "solar panel array," "solar energy field" or "solar energy units."

The question of whether a proposed use falls within a given classification is a question of law that is fully subject to this Court's review. *A & L Investments v. Zoning Hearing Board of the City of McKeesport*, 829 A.2d 775 (Pa.Cmwlth.2003). Ascribing the plain and ordinary meaning to the term "solar energy units" and, in light of the undisputed evidence, this Court concludes that the term "solar energy units" includes the Applicants' proposed "solar energy field" and/or "solar panel array." To the extent that the ZHB argues that the proposed use is any different from the use of a lesser number of solar energy panels needed to power an individual home, there is no basis in the Zoning Ordinance for such a distinction based on the number of panels. In both cases, the use of the solar panels is exactly the same, i.e., on-site power generation solely to serve the principal use of the Property.

**4.** Section 180–94(A)–(G) provides:

Within the A/RR ... Zone[ ], public and private schools are permitted by special exception, subject to the following criteria:
A. All height, area, setback, and coverage standards within the underlying zone shall apply;
B. All off-street parking lots shall be set back a minimum of 25 feet and shall be screened from all property lines;
C. All buildings shall be set back at least 100 feet from all property lines;
D. If education or day-care is offered below the college level, an outdoor play area shall be provided, at the rate of 65 square feet per individual enrolled. Off-street parking lots shall not be used as outdoor play areas. Outdoor play areas shall not be located within the front yard and must be set back a minimum of 25 feet from all property lines. Outdoor play areas shall be completely enclosed by a minimum four-foot fence and screened from adjacent properties. Any vegetative materials located within the outdoor play areas shall be of a nonharmful type (e.g. poisonous, thorny, allergenic, etc.). All outdoor play areas must provide a means of shade, such as shade trees or pavilions;
E. Enrollment shall be defined as the largest number of students on the site at any one time during a seven-day period;
F. Passenger drop-off and pickup areas shall be provided and arranged so that students do not have to cross traffic lanes on or adjacent to the school;
G. *Accessory uses customarily incidental to the above permitted uses.*
Zoning Ordinance, Section 180–94(A)–(G). (Emphasis added).

A.2d 1216 (Pa.Cmwlth.2009), for the definition of "customarily incidental:"

> 'Customarily incidental' is best understood by invoking an objective reasonable person standard. Under the standard, *we may look not only at how frequently the proposed accessory use is found in association with the primary use* (if such evidence is available, it certainly is relevant) *but also at the applicant's particular circumstances, the zoning ordinance and the indications therein as to the governing body's intent regarding the intensity of land use appropriate to the particular district, as well as the surrounding land conditions and any other relevant information, including general experience and common understanding,* to reach a legal conclusion as to whether a reasonable person could consider the use in question to be customarily incidental. This approach respects the need for an understandable legal standard and the flexibility that is a necessary component of the analysis. (Emphasis added).

*Hess,* 977 A.2d at 1224.

Pursuant to *Hess,* the ZHB went on to consider how frequently solar energy panels were found associated with a school. It noted that Applicants did not present any evidence of "other instances" in which the same or a similar type of solar energy panels were used to generate energy to a school. The ZHB indicated that it, therefore, had "no reason to believe that a solar field like the one proposed here has ever been constructed and used in association with a school facility." ZHB Decision, March 10, 2011, at 23.

The ZHB also considered the purpose of the A/RR Zoning District:

> Purpose. It is the purpose of this zone to promote residential areas and requirements for low density uses and to permit agriculture, conservation, recreation and other open space purposes. It is the intent of this zone to provide for residential development at densities that maintain a rural, open character and continue to rely upon on-site facilities; to provide for adequate housing opportunities by allowing a variety of housing choices; to provide sufficient light, air and privacy through adequate regulation of building density and placement and size; and to allow for the continuation of agriculture to promote the development of open space and recreation activities. This zone closely reflects current land use trends and densities within the Township.

Zoning Ordinance, Section 180–16(A).

Continuing with its analysis of whether the solar panels were "customarily incidental" to the school under *Hess,* the ZHB concluded that each of the 7,000 panels constituted a "structure" as defined in Section 180–15 of the Zoning Ordinance:

> [a]ny assembly of materials constructed or erected with a fixed location on the ground, or attached to something having a fixed location on the ground, any portion of which is above the natural surface of the ground.

The ZHB found that the erection of "7,000 structures" within a four-acre area that would otherwise be devoted to open space was "clearly inconsistent with the stated purpose of the A/RR Zoning District to 'maintain a rural, open character' and 'to promote the development of open space and recreation activities.'" ZHB Decision, March 10, 2011, at 24.

The ZHB also found that the Property was not an appropriate site because the solar panels would be in close proximity to residential properties.

Based on the above factors enunciated in *Hess,* the ZHB concluded that while the proposed solar energy field would be locat-

ed on the same lot as the School, and would be subordinate to the School, the solar energy field did not constitute a permitted "accessory use" because such use was not "customarily incidental" to the School.

Applicants filed a land use appeal on March 30, 2011. Lehigh Township timely intervened. After briefs were filed and oral argument held, the common pleas court, based on the record before the ZHB, affirmed in an opinion and order dated March 5, 2012.

 On appeal[5], Applicants raise four issues: (1) whether the common pleas court erred when it concluded that the proposed solar energy field was not permitted as an "accessory use" where the Zoning Ordinance expressly permitted solar energy units as "accessory uses" in every Zoning District; (2) whether the common pleas court erred when it concluded that the solar energy field was not "customarily incidental" to the School despite specific findings of fact and conclusions of law that the electricity generated by the solar energy field would be used by the School and would replace a substantial portion of the electricity currently used by the School; (3) whether the common pleas court erred when it concluded that solar energy field was not "customarily incidental" to the School based solely on an alleged lack of evidence that such a use has never been constructed and used in conjunction with a school facility; and (4) whether the common pleas court erred when it concluded that the solar energy field was not a use "customarily incidental"

to the School due to the number and location of proposed structures?

### I.

Applicants argue that their proposed solar energy field is permitted *as of right* on the Property. They contend that the common pleas court misinterpreted Section 180–25(A) of the Ordinance which specifically designates solar energy units as an "accessory use" allowed in *every* Zoning District. Again, Section 180–25(A) titled "Accessory Uses and Structures" provides, in part:

> Solar energy units *shall be permitted in any zone* and *subject to the requirements of the zone.* (Emphasis added).

Applicants argue that the Township has already legislatively determined that solar energy units are "customarily incidental" to every principal use in every Zoning District. It was unnecessary for Applicants to separately and independently establish that solar energy units are "customarily incidental" to a school.

 The interpretation of a zoning ordinance is a question of law. *A & L Investments.* In deciding whether a zoning hearing board correctly interprets a zoning ordinance, this Court must bear in mind that zoning ordinances should receive reasonable and fair construction in light of the subject matter dealt with and the manifest intention of the local legislative body. *Appeal of Perrin,* 305 Pa. 42, 55, 156 A. 305, 308–09 (1931). A court ascertaining the intent of the drafters of an ordinance, should presume they did not intend a result which is absurd, unreasonable or impossible of execution. *Rudolph v. Zoning*

---

**5.** Since the common pleas court did not accept additional evidence, this Court's scope of review is limited to determining whether the common pleas court committed an abuse of discretion or an error of law in reaching its decision. *Valley View Civic Ass'n v. Zoning*

*Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983). The common pleas court commits an abuse of discretion where findings of fact are not supported by substantial evidence in the record. *Id.*

*Hearing Board of College Township,* 80 Pa.Cmwlth. 28, 470 A.2d 1104 (1984).

██ After reviewing Section 180–25(A) in context of the Zoning Ordinance, this Court agrees with Applicants. The plain language of the Zoning Ordinance states that solar energy units are permitted as an "accessory use" in any zone. The provision is found in the section of the Zoning Ordinance which deals specifically with "Accessory Uses and Structures." The inclusion of solar energy units in this Section is telling and indicative of the Township's legislative declaration that solar energy units are a permitted "accessory use" so long as they meet the "requirements of the zone.[6]" Thus, the ZHB was required to *begin* with the premise that solar energy units are an "accessory use." The only prerequisite is that the solar energy units must comply with the "requirements of the zone."

██ The Ordinance does not define the term "requirements of the zone." However, this Court finds that this language clearly and unambiguously refers to the height, area, setback and coverage standards *applicable to "accessory uses" in each particular zone.* Section 180–16 of the Zoning Ordinance sets forth the requirements for "accessory uses" in the A/RR Zoning District. The only requirements for "accessory uses" in the A/RR Zoning District are the limitation of structure height (20 feet) and the limitation against the placement of an "accessory use" or structure in the front yard. By all accounts, Applicants' proposed use met these standards.

That should have been the extent of the ZHB's inquiry.

██ The ZHB, instead, looked to *the special exception provisions that pertain* to a school use in the A/RR Zoning District. The ZHB reasoned that public and private schools were permitted in the A/RR Zoning District by special exception under Section 180–16(C)(12), *subject to* the "specific criteria" in Section 180–94(G). Again, this Section permits "accessory uses customarily incidental" to the school. The ZHB looked to the "requirements" of Section 180–94(G) to determine *whether* Applicants' solar energy field use was a permitted "accessory use." This was a clear error of law.

First, "accessory use" is defined in Section 83–26 of the Zoning Ordinance as: "[a] subordinate use or building *customarily incidental to,* and located on the same lot occupied by, the main use or building." (Emphasis added) The term "customarily incidental" is *incorporated within* the definition of "accessory use." If solar energy units are permitted as an "accessory use" there is no reason for an applicant to separately establish that they are "customarily incidental" to the principal use when the very definition of "accessory use" requires that such use be "customarily incidental." Because solar energy units were *already* legislatively declared by the Township to be an "accessory use" for every use in every zone it was unnecessary for the ZHB to inquire into whether the use was "customarily incidental" to a school. By undertaking the inquiry of whether the use was "customarily incidental" to a school, the ZHB overrode the legislative declaration that the solar energy units *are* an "accessory use." In other words, the ZHB proceeded to decide *whether* the proposed solar energy field constituted a permitted "accessory use" when that question was

---

**6.** It is undisputed that the proposed solar energy field would supply power solely for on-site use by the School. Whether solar energy panels may be a principal use of a property in the A/RR Zoning District is not before this Court.

already answered definitively in the Zoning Ordinance.

The ZHB's interpretation is also circuitous. Under the ZHB's interpretation solar energy units are a permitted "accessory use" in every zone under Section 180–25(A) *so long as the use is permitted as an "accessory use" in each zone.* This interpretation is not tenable.

The ZHB's interpretation renders Section 180–25(A) inoperative and the permissive nature of the provision a nullity. The readily-ascertainable intent of Section 180–25(A) was to promote the use of alternative energy systems in each zoning district. The clear intent of Section 180–25(A) was to encourage on-site generation of electric power from this alternative energy source, regardless of the nature of the underlying use. Undoubtedly, the goal of such a policy is to supplant existing off-site sources of electric power generation, rather than traditionally relying on fossil fuels, with clean, renewable energy sources. The ZHB's interpretation would force landowners wishing to further this intent to first demonstrate that such alternative energy uses are "customarily incidental" to their underlying use, which will be difficult, if not impossible, to show given their relative newness and dearth.

This Court concludes that the common pleas court erred as a matter of law when it affirmed the ZHB's dismissal of the Application to install the solar energy field. The order of the common pleas court is reversed.[7] The matter is remanded and the ZHB is directed to approve Applicants' application to install the energy field as an "accessory use" to the School.

7. Because this Court has disposed of this appeal on the first issue, it is unnecessary to address Applicants' remaining three issues.

***ORDER***

AND NOW, this 9th day of April, 2013, the order of the Court of Common Pleas of Northampton County in the above-captioned case is hereby reversed. The matter is remanded and the Zoning Hearing Board is directed to approve Northampton Area School District's and Alliance Energy Group, LLC's application to install the solar energy field as an accessory use to the Lehigh Elementary School.