Wexford Science and Technology,      :
LLC      :
     :
     :
     v.      :    No. 1316 C.D. 2021
     :    Argued: May 16, 2022
City of Pittsburgh Zoning Board      :
of Adjustment      :
     :
Appeal of: Coltart Area Residents      :
Association, Marjory Lake, Oakcliffe      :
Community Organization, Mark Oleniacz, :
South Oakland Neighborhood Group and    :
Elena Zaitsoff      :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT            FILED: August 1, 2022

        Coltart Area Residents Association, Oakcliffe Community Organization, South Oakland Neighborhood Group, Marjory Lake, Mark Oleniacz, and Elena Zaitsoff (collectively, Intervenors) have appealed an order of the Court of Common Pleas of Allegheny County (trial court) that granted the zoning appeal of Wexford Science and Technology, LLC (Developer). The trial court reversed the decision of the City of Pittsburgh Zoning Board of Adjustment (Zoning Board), which denied Developer's application to construct a 13-story office building on Forbes Avenue in the City of Pittsburgh (City). On appeal, Intervenors argue that the trial court erred in holding that the height of an adjacent hotel determined the permitted height of Developer's proposed building. Intervenors also argue that the trial court lacked jurisdiction over Developer's claim for a 20% increase in that

permitted height by virtue of its sustainable building design. Upon review, we affirm the trial court.

## Background

Developer owns three adjacent lots on Forbes Avenue that are located in the Oakland Public Realm Subdistrict-C Zoning District (Oakland District). Developer's lots are bounded on the west by Coltart Street and on the south by Iroquois Way. The fourth lot on this block has been developed with a 12-story, 128-foot-tall hotel building. The hotel's address is 3454 Forbes Avenue, but its entrance is on McKee Place, which provides the eastern boundary of the block.

Developer proposed to consolidate its three lots and construct a 13-story, 188.6-foot-tall building thereon. The new structure was planned to have nine floors of office and laboratory space; three floors of parking; and one floor of retail space on the ground floor.

In the Oakland District, Section 908.03.D.3(c) of the Zoning Code[1] limits a building's height to 85 feet and regulates the ratio of the building floor size. Because its proposed building would exceed the applicable dimensional standards, Developer applied to the Zoning Board for, *inter alia*, a variance

> [f]rom the permitted height of 128' (portion of the building where residential compatib[ility] standards don't apply) and 60 feet (with LEED[2] Bonus where residential compatib[ility] standards do apply) to the requested height of 188.6'.

---

[1] ZONING CODE OF THE CITY OF PITTSBURGH, PENNSYLVANIA (ZONING CODE), §908.03.D.3(c), effective June 4, 2002.

[2] According to the United States Green Building Council, Leadership in Energy and Environmental Design, or LEED,

> certified buildings save money, improve efficiency, lower carbon emissions and create healthier places for people. They are a critical part of addressing climate

2

Zoning Board Decision at 1; Reproduced Record at 181a (R.R.____). The "permitted height of 128 [feet]" was based upon the height of the adjacent hotel, which provided the so-called contextual height for Developer's proposed building. *See* ZONING CODE, §925.07.D.

After a hearing, the Zoning Board denied Developer's request for a variance to construct a 188.6-foot-tall building. The Zoning Board held that the height of the adjacent hotel did not establish the permitted, or "contextual," height for Developer's building under the Zoning Code. Section 925.07.D states that "the contextual height may fall at any point between the (zoning district) maximum height limit *and the building height that exists on the adjoining lot that is oriented on the same side of the street as the subject lot*." ZONING CODE, §925.07.D (emphasis added). The Zoning Board concluded that because the hotel's public entrance is on McKee Place, the hotel did not have the same orientation as Developer's proposed building. Accordingly, the Zoning Board held that Developer could not use the height of the hotel to determine the permitted height of its proposed building.

As to Developer's claim for a LEED height bonus, the Zoning Board agreed that Developer's building will meet LEED sustainable building design standards. This would allow Developer a total building height of 102 feet, *i.e.*, a

_____

change and meeting [environmental, social and governance (ESG)] goals, enhancing resilience, and supporting more equitable communities.

To achieve LEED certification, a project earns points by adhering to prerequisites and credits that address carbon, energy, water, waste, transportation, materials, health and indoor environmental quality. Projects go through a verification and review process by [the Green Business Certification Inc. (GBCI)] and are awarded points that correspond to a level of LEED certification: Certified (40-49 points), Silver (50-59 points), Gold (60-79 points) and Platinum (80+ points).

*See* https://www.usgbc.org/leed (last visited July 29, 2022).

20% addition to the maximum 85-foot height. ZONING CODE, §915.04.D.[3] However, the Zoning Code also provides that "bonuses may not be applied" in the context of a variance or special exception. ZONING CODE, §915.04.B. Because Developer sought a variance to allow construction of a 188.6-foot-tall building, it could not also claim the height bonus. The Zoning Board explained that Developer "can utilize the bonuses, or it can seek variances and special exceptions, but it cannot do both." Zoning Board Decision at 6, Conclusions of Law No. 16; R.R. 186a.

Developer appealed to the trial court.[4] Developer did not challenge the Zoning Board's denial of its variance to construct a 188.6-foot-tall building. Instead, Developer reduced the height of its proposed building to 153 feet, which Developer believed did not require a variance. Specifically, Developer used the 128-foot height

---

[3]Section 915.04.D of the Zoning Code permits a 20% height bonus for LEED certified buildings. It states:

> If floor area ratio and density bonuses are permitted pursuant to Section 915.04.E, the maximum floor area ratio and height may exceed the amounts specified for the applicable base zoning district, but shall not exceed an additional twenty (20) percent of floor area ratio and height.

ZONING CODE, §915.04.D. As such, the Zoning Board reasoned that Developer would be allowed to claim 20% of the 85-foot height limit for the Oakland District, or 17 feet, as its height bonus. Adding a 17-foot height bonus to the 85-foot height limit results in a total permitted height of 102 feet.

[4] By way of background, on April 10, 2020, Intervenors moved to intervene in Developer's land use appeal. The trial court denied the motion to intervene, and Intervenors appealed to this Court. While the appeal was pending, the trial court approved a consent order based on a settlement agreement reached among Developer, the Oakland Planning and Development Corporation, and the City, which modified the Zoning Board's decision to reduce the height of the building to 153 feet and marked the case closed. On July 23, 2021, this Court vacated the trial court's order denying the motion to intervene and remanded the matter for further proceedings. *See Wexford Science and Technology, LLC v. City of Pittsburgh Zoning Board of Adjustment*, 260 A.3d 316 (Pa. Cmwlth. 2021). On remand, Developer no longer opposed the intervention, and the trial court granted Intervenors' motion to intervene. Developer's Brief at 9.

4

of the hotel as the "base height" for Developer's building, to which it added the 20% sustainability height bonus. Developer's Trial Court Brief at 3; R.R. 343a.

## Trial Court Decision

The trial court did not take evidence. By opinion and order dated October 19, 2021, the trial court reversed the Zoning Board and permitted Developer to construct a 153-foot-tall building.

The trial court held that Section 925.07.D of the Zoning Code refers to the orientation of the "adjoining lot," not the building thereon. ZONING CODE, §925.07.D. Here, the hotel is located on "the only other lot on the subject block of Forbes Avenue and it is 128-feet high. All of the lots on the block are oriented to Forbes Avenue." Trial Court Op. at 3. The trial court reasoned that because the term "oriented" is not defined in the Zoning Code, it must be given "its common and approved usage," *id*. at 4, and concluded that the hotel's height of 128 feet determined the permissible height of Developer's proposed building. Further, Developer was entitled to add the 20% LEED height bonus to the contextual height of 128 feet, for a total of 153 feet.

Intervenors appealed to this Court.

## Appeal

On appeal,[5] Intervenors raise two issues for our consideration. First, they argue that the trial court erred in ruling that Developer was permitted to use the height of the adjoining hotel as the base height for its proposed building. Second, they argue that the trial court lacked subject matter jurisdiction over the 20% LEED

---

[5]Where, as here, the trial court takes no additional evidence, our standard of review determines whether the Zoning Board committed an error of law or abused its discretion. *Hamilton Hills Group, LLC v. Hamilton Township Zoning Hearing Board*, 4 A.3d 788, 792 n.6 (Pa. Cmwlth. 2010).

5

height bonus because Developer did not follow the procedures in the Zoning Code for obtaining such a bonus. We address these issues *seriatim*.

## I. Contextual Height

In their first issue, Intervenors argue that the trial court erred in concluding that the 128-foot height of the adjacent hotel provided the permitted height for Developer's building because the hotel building is oriented to McKee Place, not to Forbes Avenue. The evidence was uncontested that the hotel's "pedestrian entrance, the vehicle entrance, [the] canopy over the front door, the prominent signage identifying the [hotel] building and [the] flags are all oriented on McKee Place." Intervenors' Brief at 17. Because the dictionary meaning of the term "oriented" is "to align or position in a particular direction" or to be "functionally directed," Intervenors contend that only a building can be oriented. Intervenors' Brief at 13-14. Here, the hotel is "'functionally directed' to serve guests and receive mail only via its east main door" on McKee Place, not north on Forbes Avenue. Intervenors' Brief at 20. Intervenors assert that the trial court's observation that both the hotel and Developer's proposed building have addresses on Forbes Avenue was irrelevant because a property owner may change its street address under the City's Uniform Street Naming and Addressing Ordinance, No. 20-2009, §§420.01-420.12, effective October 31, 2019.

Developer responds that the trial court correctly applied the Zoning Code. Contextual height does not depend upon the location of the neighboring building's front door but, rather, on the orientation of each lot. Section 925.07.D of the Zoning Code provides that "the contextual height may fall at any point between the (zoning district) maximum height limit and the building height that exists on *the adjoining lot that is oriented on the same side of the street as the subject lot*."

6

ZONING CODE, §925.07.D (emphasis added). The adjective "oriented" modifies the noun "lot," not "building." This same wording appears in the Zoning Code's definition of "contextual height" as "the building height that exists on a *lot that is adjacent to and oriented to* the same street as the subject lot." ZONING CODE, §926(58) (emphasis added). In short, contextual height turns on lot, not building, orientation.

In support, Developer observes that the City's site map shows that all of the lots on the block where Developer's proposed building will be built face Forbes Avenue. R.R. 28a. South of this block, the lot orientations change. The smaller residential lots along Coltart Avenue face Coltart Avenue, and lots along McKee Place face McKee Place. In every case, the longer lot lines are parallel to each other and perpendicular to the street to which the lot is oriented. The long lot lines for Developer's lots and the hotel lot all lie perpendicular to Forbes Avenue.

The interpretation of an ordinance presents this Court with a question of law subject to plenary review. *Northampton Area School District v. Zoning Hearing Board of Township of Lehigh*, 64 A.3d 1152, 1157 (Pa. Cmwlth. 2013). In reviewing the plain language of the text of an ordinance, we "construe words and phrases in a sensible manner, utilize the rules of grammar and apply their common and approved usage, and give undefined terms their plain, ordinary meaning." *Adams Outdoor Advertising, LP v. Zoning Hearing Board of Smithfield Township*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006). Further, "ambiguous language in an ordinance [must be] construed in favor of the property owner and against any implied extension of the restriction; however, such an interpretation is unwarranted where 'the words of the zoning ordinance are clear and free from any ambiguity.'" *Delchester Developers, L.P. v. Zoning Hearing Board of Township of London*

7

*Grove*, 161 A.3d 1081, 1104 (Pa. Cmwlth. 2017) (citing *City of Hope v. Sadsbury Township Zoning Hearing Board*, 890 A.2d 1137, 1143 (Pa. Cmwlth. 2006)). A zoning ordinance is ambiguous "if the pertinent provision is susceptible to more than one reasonable interpretation, [] or when the language is vague, uncertain, or indefinite." *Kohl v. New Sewickley Township Zoning Hearing Board*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015). Finally, "because the zoning hearing board is the entity charged with the interpretation and application of a zoning ordinance, a board's interpretation of its own ordinance is entitled to great weight and deference." *Delchester Developers, L.P.*, 161 A.3d at 1104. However, deference to an agency's interpretation "never comes into play when the statute is clear." *Seeton v. Pennsylvania Game Commission*, 937 A.2d 1028, 1037 (Pa. 2007). Because "a zoning board is not a legislative body, [] it lacks authority to modify or amend the terms of a zoning ordinance." *Greth Development Group, Inc. v. Zoning Hearing Board of Lower Heidelberg Township*, 918 A.2d 181, 187 (Pa. Cmwlth. 2007).

With this guidance in mind, we consider Section 925.07.D of the Zoning Code, which states, in pertinent part, as follows:

> Regardless of the maximum height limit imposed by the zoning district standards of this Code, *applicants shall be allowed to use a contextual height limit*. The allowed contextual height may fall at any point between the (zoning district) maximum height limit *and the average height of the buildings that exist on adjoining lots that are oriented on the same side of the street as the subject lot*. If the subject lot is a corner lot, the contextual height may fall at any point between the (zoning district) maximum height limit *and the building height that exists on the adjoining lot that is oriented on the same side of the street as the subject lot*.

ZONING CODE, §925.07.D (emphasis added). Section 926(58) of the Zoning Code defines "contextual height" as

8

an imaginary line that may be established at any point between the maximum building height of the zoning district *and the building height that exists on a lot that is adjacent to and oriented to the same street as the subject lot*.

ZONING CODE, §926(58) (emphasis added). Stated otherwise, a proposed building's contextual height is determined by the height of the building on the adjacent lot.

In both Zoning Code provisions, the word "oriented" modifies "lot," not building. Indeed, the actual term used is "building height" not "building." It is awkward, if not impossible, to apply the adjectival word "oriented" to "building height." Building height is not oriented to a street but, rather, to the sky.

Nevertheless, Intervenors direct the Court to Merriam-Webster's Collegiate Dictionary, which defines the verb "orient," in relevant part, as follows:

> 3a: to set or arrange in any determinate position especially in relation to the points of the compass
>
> b: to ascertain the bearings of
>
> c: to cause to face or point toward the east
>
> *specifically*: to build (a church or temple) with the longitudinal axis pointing eastward and the chief altar at the eastern end

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, https://www.merriam-webster.com/dictionary/orient (last visited July 29, 2022). Intervenors contend that only a structure can be "set or arrange[d]" in a "determinate position"; a lot has no "orientation" until a structure is built thereon. *Id.*; Intervenors' Brief at 22.

We are not persuaded. The City's site map shows that lot lines determine lot orientation. The longer boundary lines of each lot are parallel to each other and perpendicular to the street they face. Here, the lines of the hotel lot are fixed in the same direction as Developer's three lots, and all the lots face Forbes

Avenue. The hotel is a rectangular building built out to its lot boundaries, as will be Developer's building. The location of the adjacent building's door is not mentioned in Section 925.07.D of the Zoning Code.

Intervenors point to the contextual setback provisions in Section 925.06.B, 925.06.C, and 925.06.D of the Zoning Code to support their argument that only a structure has orientation. Intervenors' Brief at 23. Section 925.06.B regulates contextual front setbacks and states, in relevant part, as follows:

> Regardless of the minimum front setback requirements imposed by the zoning district standards of this Code, applicants shall be allowed to use the Contextual Front Setback. *The Contextual Front Setback shall apply only to primary uses and structures.* A Contextual Front Setback for any lot with street frontage may fall at any point between the (zoning district) required front setback *and the front setback that exists on a lot that is adjacent and oriented on the same side of the street as the subject lot. . . .*

ZONING CODE, §925.06.B (emphasis added). Section 925.06.C regulates contextual side setbacks and states as follows:

> Regardless of the minimum side setback requirements imposed by the zoning standards of this Code, applicants shall be allowed to use a Contextual Side Setback. *The Contextual Side Setback shall apply only to primary uses and structures.* A Contextual Side Setback may fall at any point between the required side setback *and the side setback that exists on a lot that is adjacent and oriented to the same street as the subject lot. . . .*

ZONING CODE, §925.06.C (emphasis added). Section 925.06.D states:

> In the case of corner or irregular lots, the Zoning Administrator shall determine which frontages shall be considered the "front," "side" and "rear" setbacks. *Criteria to be considered shall include but not be limited to orientation of the primary structure,*

> *orientation of the neighboring structures, and the location of the entrances to the structure.*

ZONING CODE, §925.06.D (emphasis added). Finally, the Zoning Code defines "contextual setback" as

> an imaginary line that may be established at any point between the (zoning district) required front setback *and the front setback that exists on a lot that is adjacent and oriented to the same street as the subject lot.*

ZONING CODE, §926(57) (emphasis added). Intervenors emphasize the references in these provisions to "primary uses and structures" and "orientation of the primary structure" or the "orientation of the neighboring structures." ZONING CODE, §925.06.B, 925.06.D.

Intervenors' reliance on these setback provisions is misplaced. First, Intervenors ignore the phrase "*a lot that is* adjacent and *oriented* to the same street as the subject lot," which appears in the above-referenced provisions, just as it does in Section 925.07.D of the Zoning Code. Second, there is no doubt that setbacks apply to *structures*; a lot cannot have a setback.

Notably, Section 925.06.D provides that "[i]n the case of corner or irregular lots," the Zoning Administrator shall determine the "front," "side," and "rear" setbacks by considering, *inter alia*, the "orientation of the primary structure, orientation of the neighboring structures, and the location of the entrances to the structure." ZONING CODE, §925.06.D. However, the Zoning Code does not contain a similar directive with respect to a proposed building's contextual height. Where, as here, "the legislature includes specific language in one section of a statute and excludes it from another, it should not be implied where excluded." *Cherry v. Pennsylvania Higher Education Assistance Agency*, 620 A.2d 687, 690-91 (Pa.

11

Cmwlth. 1993). Had the legislative body intended "orientation of the neighboring structure" to be determinative in Section 925.07.D, it could have so specified, but it did not do so. In short, the permitted height of Developer's proposed building does not turn on the hotel owner's decision "to greet guests on Forbes Avenue instead of McKee Place[.]" Developer's Brief at 22.

We hold that Sections 925.07.D and 926(58) of the Zoning Code provide that the permitted height of Developer's building is determined by the height of the hotel "on the adjoining lot that is oriented on the same side of the street as the subject lot." ZONING CODE, §§925.07.D, 926(58). Here, Developer's three lots and the adjoining hotel lot are each "set or arranged" in the same "determinate position" facing Forbes Avenue. The trial court did not err in holding that the hotel's height of 128 feet established the contextual height for Developer's proposed building.

## II. LEED Height Bonus

Intervenors argue, next, that the trial court lacked subject matter jurisdiction over the 20% sustainability height bonus because Developer did not first present the bonus request to the Zoning Administrator. As a result, Intervenors contend that neither the Zoning Board nor the trial court has jurisdiction to consider Developer's eligibility for the LEED bonus.

The Zoning Code states that the Zoning Board has the power to "hear and decide appeals where it is alleged that *there is error in any order, requirement, decision or determination made by the Zoning Administrator. . . .*" ZONING CODE, §923.02.B.1 (emphasis added). It also states that "[a]ppeals to the [Zoning] Board may be taken *by any person aggrieved, or the head of any department affected by a decision of the city official from whose action the appeal is taken*." ZONING CODE, §923.02.D (emphasis added). Intervenors argue no city official acted on

12

Developer's claim for a LEED bonus, and, thus, the Zoning Board lacked jurisdiction under Section 923.02.B.1.

Developer counters that Section 915.04.E of the Zoning Code states that the height bonus "*may be permitted* as an Administrator's Exception," but it does not mandate that a landowner pursue a height bonus from the Administrator before submitting a variance application. ZONING CODE, §915.04.E (emphasis added). Even so, Developer's failure to apply for an exception from the Zoning Administrator did not deprive the court of subject matter jurisdiction. Further, Intervenors failed to timely raise this procedural objection before the Zoning Board and the trial court. Intervenors have waived the issue.

> With respect to the LEED bonus, the Zoning Code states as follows:
>
> 1)   *For all non-residential zoning districts, except the* [*Local Neighborhood Commercial (LNC)*] *Zoning District, the floor area and height bonus of this Section may be permitted as an Administrator's Exception*.
>
> 2)   In the LNC Zoning District, the approval of the floor area and height bonus of this Section shall require the approval of a Project Development Plan by the Planning Commission after a public hearing.

ZONING CODE, §915.04.E (emphasis added). Notably, Section 901.07.G of the Zoning Code states that "[t]he word 'shall' is always mandatory[ and that t]he words 'may' and 'should' are always permissive." ZONING CODE, §901.07.G. Developer argues that Section 915.04.E.1 authorizes the grant of a height bonus by Administrator's Exception but does not require it. We agree.

*In re Borough of Valley-Hi*, 420 A.2d 15 (Pa. Cmwlth. 1980), concerned the incorporation of a portion of a township as a borough, which the trial

13

court approved. The new borough then petitioned to correct the description of its legal boundaries and to decrease the number of its councilmen. After the trial court granted the petition, residents of the township moved to set aside the incorporation of the borough on the theory that the defective description had deprived the trial court of jurisdiction to approve the incorporation. The trial court agreed. This Court reversed, holding that the defective description "was merely a procedural error." *Id.* at 17. Nevertheless, "the [trial] court had jurisdiction over the application for incorporation and [] any irregularity in those proceedings was waived by the parties by their failure to raise an objection in a timely fashion." *Id.* Developer argues that here any "irregularity" in the proceedings regarding the LEED height bonus was waived by Intervenors.

Section 923.02.B of the Zoning Code provides that the Zoning Board has the following power:

> 1. To hear and decide appeals where it is alleged that there is error in any order, requirement, decision or determination made by the Zoning Administrator or the Chief of the Bureau of Building Inspection in the administration of this Code, and, upon appeal, to interpret any provision of this Code where its meaning or application is in question;
>
> 2. *To authorize upon appeal, in specific cases, variances from the terms of this Code in accordance with Sec[tion] 922.09;*
>
> 3. To hear and decide, upon appeal from the grant or denial of zoning approval with respect to a specific application, issues of the validity of any provision of this Code; and
>
> 4. To hear and decide special exceptions authorized by specific provisions of this Code, in accordance with Sec[tion] 922.07 and other provisions of this Code that prescribe standards for the respective special exceptions authorized.

14

5.    The Board, in conformity with this Code, may affirm or reverse or modify, wholly or partly, any order, requirement, decision or determination appealed, and may make such order as it finds to be proper, as if acting with all the powers of the officer from whom the appeal has been taken.

ZONING CODE, §923.02.B (emphasis added).

Under authority of Section 923.02.B, Developer applied to the Zoning Board for, *inter alia*, a variance from the "permitted height of 128' . . . and 60 feet (with LEED Bonus where residential compatib[ility] standards do apply)" to allow for a height of 188.6 feet. Zoning Board Decision at 1; R.R. 181a. Plainly, the extent of the variance needed turned on the LEED height bonus and, thus, was within the Zoning Board's jurisdiction to consider. At most (if at all), the fact the Zoning Administrator did not first determine Developer's entitlement to a height bonus constituted an "irregularity" of the type that is waivable. *Borough of Valley-Hi*, 420 A.2d at 17.

In sum, the trial court had subject matter jurisdiction over the issue of the height bonus, and "any irregularity in those proceedings was waived by the [Intervenors] by their failure to raise an objection in a timely fashion." *Id*.

**Conclusion**

We hold that the hotel's height provided the base height for Developer's proposed building under Section 925.07.D of the Zoning Code. We also hold that the trial court had subject matter jurisdiction over Developer's assertion that it was entitled to a sustainability height bonus. This matter came before the Zoning Board as part of Developer's variance application, over which the Zoning Board had subject matter jurisdiction under Section 922.09 of the Zoning Code. ZONING CODE, §922.09 (relating to variances).

15

For these reasons, we affirm the trial court's order of October 19, 2021.

_____
MARY HANNAH LEAVITT, President Judge Emerita

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Wexford Science and Technology, LLC | : : : | |
| v. | : : | No. 1316 C.D. 2021 |
| City of Pittsburgh Zoning Board of Adjustment | : : : | |
| Appeal of: Coltart Area Residents Association, Marjory Lake, Oakcliffe Community Organization, Mark Oleniacz, South Oakland Neighborhood Group and Elena Zaitsoff | : : : : : | |

# **O R D E R**

AND NOW, this 1st day of August, 2022, the order of the Court of Common Pleas of Allegheny County dated October 19, 2021, in the above-captioned matter, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita